IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SUE EVENWEL AND | § | |
| EDWARD PFENNINGER, | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CAUSE NO. 1:14-CV-00335-LY-CH-MHS |
| | § | |
| RICK PERRY, IN HIS OFFICIAL | § | |
| CAPACITY AS GOVERNOR | § | |
| OF TEXAS; AND NANDITA BERRY, | § | |
| IN HER OFFICIAL CAPACITY AS | § | |
| TEXAS SECRETARY OF STATE, | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Governor Rick Perry and Secretary of State Nandita Berry, in their official capacities, file this *Reply in Support of their Motion to Dismiss Plaintiffs' Original Complaint*, and would respectfully show as follows:

**I.     Plaintiffs cannot demonstrate their claims are based on a valid legal theory.**

Plaintiffs' Response serves to demonstrate that the legal theory supporting their suit has never been recognized as valid by any court. Plaintiffs appear to assert that their suit may survive the Motion to Dismiss because they generally allege a violation of the Fourteenth Amendment's "one person, one vote" principle.[1] However, while it is true that "one person, one vote" claims are justiciable in the most general sense, surviving a 12(b)(6) motion requires more than simply alleging a violation of "one person, one vote." *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989)

---

[1] Without any explanation or support, Plaintiffs argue that the fact the Supreme Court has never mandated the States use a particular set of population data when districting "is not a basis for dismissal." Response at 9 n.3. Yet, it certainly is. As explained herein and in Defendants' original Motion, the absence of any recognized legal basis upon which to find that Texas was required to consider equalizing any population other than total population renders Plaintiffs' asserted equal protection claim—which is based on a presumption that CVAP or some variant of voter registration population data is the required metric for measuring compliance with the Equal Protection Clause—necessarily invalid. If the Court finds, as a matter of law, that states are permitted to equalize total population, as Texas has done, and are not required to equalize any other population group in order to satisfy equal protection concerns, then Plaintiffs will have necessarily failed to state a claim upon which relief can be granted.

(dismissal proper when suit based on an "ultimately unavailing" legal theory); *see also, e.g., Vieth v. Jubelirer*, 541 U.S. 267, 305 (2004) (plurality op.) (affirming dismissal of "one person, one vote" claim alleging unlawful political gerrymandering because there existed no "judicially enforceable limit on the political considerations that the States and Congress may take into account when districting"). Rather, Plaintiffs must plead facts that, if true, state a plausible claim for relief under a recognized legal theory. *See, e.g., McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("complaint lacks an arguable basis in law if it is 'based on an indisputably meritless legal theory'") (quoting *Neitzke*, 490 U.S. at 327). Plaintiffs cannot do so here because the legal theory that forms the sole basis for their suit has not been recognized by any court, and all courts that have considered the legal question presented here have expressly rejected essentially identical claims.

More specifically, the viability of Plaintiffs' suit is dependent upon their assertion that the burden on the right to an "equally weighted vote" must be judicially enforced by review of alleged variances in citizen voting-age population (CVAP), registered voter population, or some other variant of voter population data. *See* Response at 18. However, no court has ever held such data is the standard by which the "equal population" principle, as articulated in *Reynolds v. Sims*, 377 U.S. 533 (1964), must be measured. Rather, and contrary to Plaintiffs' assertions, the Supreme Court has indicated that States may achieve the constitutional requisite of substantially equal voting districts by equalizing total population. *See Burns v. Richardson*, 384 U.S. 73, 92 (1966). In *Burns*, the Court acknowledged that it often relies on total population to measure compliance with the "equal population" principle; however, the Court recognized it has also "discussed substantial equivalence in terms of voter population or citizen population." *Id.* The Court made clear, though, that it made "*no distinction between the acceptability* of [] a test

[based on voter population or citizen population] and a test based on total population." *Id.* (emphasis added).

Accordingly, because it cannot be disputed that the States may demonstrate compliance with the Equal Protection Clause through "a test based on total population," *see id.*, Plaintiffs' allegations here of disparities in CVAP or voter registration population do not state a violation of any right to substantially equal voting districts. *See, e.g., Chen v. City of Houston*, 206 F.3d 502, 522 (5th Cir. 2000) (rejecting "one person, one vote" claim based on allegation that variation in CVAP between districts exceeded 10%). As such, their suit fails to state a claim upon which relief can be granted and must be dismissed. *See, e.g., Vieth*, 541 U.S. at 313 (2004) (Kennedy, J., concurring) ("one person, one vote" claim subject to dismissal because plaintiffs could not allege a violation of a judicially enforceable "standard by which to measure the burden [they] claim has been imposed on their representational rights").

Plaintiffs also cannot replead to state an equal protection violation because they readily admit, as they must, that Texas Senate districts are drawn in a manner that equalizes total population.[2] *See* Response at 2. Because districts drawn to equalize total population satisfy "one person, one vote" requirements, Plaintiffs' assertion of an equal protection violation necessarily fails on its face and is subject to immediate dismissal.[3] *See, e.g., Chen,* 206 F.3d at 522 (plaintiffs "failed to make out a *prima facie*" equal protection claim when they failed to allege

---

[2] Contrary to Plaintiffs' assertions, Defendants are not asserting that every suit challenging a state's decision to include or exclude groups from apportionment data is shielded from judicial review. *See* Response at 16. Rather, Defendants' position is that Plaintiffs' admission that Texas Senate districts are drawn to equalize total population serves to plead them out of court, *see, e.g., Chen*, 206 F.3d at 522, because the Supreme Court has indicated that there is "no constitutionally founded reason" to interfere with a state's decision to use total population data. *See Burns*, 384 U.S. at 92. Plaintiffs simply can cite no decision made by Texas in calculating its apportionment base that excluded, or included, groups based on constitutionally impermissible criteria. To the contrary, Texas use of total population data, based on the decennial census, has been acknowledged as a permissible apportionment base.

[3] Because Plaintiffs' admission that Texas Senate districts are drawn to equalize total population forecloses their equal protection claim in this Circuit, *see Chen*, 206 F.3d at 522, a single judge may dismiss this suit as "insubstantial." *See Kalson v. Paterson*, 542 F.3d 281, 287-88 (2d Cir. 2008) (claim that congressional districts must be apportioned by voting-age population dismissed by a single judge because it was "insubstantial").

total population variations between districts exceeded 10%); *Daly v. Hunt*, 93 F.3d 1212, 1228 (4th Cir. 1996)("total population is a reasonable apportionment base").

> II. **The question of whether Plaintiffs have plead a viable equal protection claim is suitable for resolution under Rule 12(b)(6).**

Lest there be any question, Defendants' Motion to Dismiss does not ask this Court to delve into the accuracy of Plaintiffs' alleged differentials in CVAP or voter registration population, as any such inquiries are fact-dependent. Rather, Defendants, for the purposes of this Motion only, assumes that Plaintiffs' allegations are true, including: (1) that Texas Senate Districts are drawn such that total population of each is substantially equal; (2) that CVAP and/or voter registration population varies by greater than 10% between certain Texas Senate districts; and (3) that Texas did not draw its Senate districts to equalize CVAP or voter registration population between districts. Even if these allegations are assumed true, they fail to state a claim for relief under the Equal Protection Clause because, as noted above: (1) the State satisfied "one person, one vote" requirements by drawing districts of equal total population and (2) no law supports Plaintiffs' assertion that districts *must* be drawn in any other way. *See Burns,* 384 U.S. at 92 (finding "*no constitutionally founded reason* to interfere" with "decision to include or exclude" groups such as non-citizens or felons from apportionment data) (emphasis added).

Indeed, no court has ever held CVAP (or some other measure of voter population) is a *required* metric by which courts must measure whether legislative districting satisfies the "equal population" principle. To the contrary, the Second Circuit found no reason to believe that voting-age population data was "the best available proxy for actually equal voting power," and cast doubt on whether it was "plausible" that such data could ever be a good proxy, because "[m]any persons of voting age cannot vote" and "many eligible voters choose not to vote." *Kalson v. Paterson,* 542 F.3d 281, 289-90 (2d Cir. 2008). Other courts have similarly questioned the

usefulness of such data. *See, e.g., Daly*, 93 F.3d at 1228 (noting use of voting-age data as apportionment base problematic because it "ignore[d] the voting strength of those persons who are between the ages of 8 and 17 at the time of the apportionment, but who would become eligible to vote before the next apportionment"). In contrast, the Supreme Court has recognized total population data, drawn from the decennial census, as the "best population data available." *See Karcher v. Daggett*, 462 U.S. 725, 738 (1983) (finding census count is a recognized "basis for good-faith attempts to achieve population equality").[4] Given this, Plaintiffs can cite no legal basis upon which to find that Texas erred by relying upon total population data when drawing current Senate districts.

Finally, there is no reasoned basis for this Court to create the unprecedented rule of law Plaintiffs advocate for in this suit, because such a rule would serve to intrude on permissible, discretionary decisions made by the Texas Legislature during the redistricting process. Requiring the States to reapportion so as to equalize districts using a particular set of population data, as Plaintiffs request, would only result in federal courts micromanaging the state redistricting process.[5] Creation of such a rule is entirely counter to the principles of deference and federalism that apply in the redistricting context. *See, e.g., White v. Weiser*, 412 U.S. 783, 795 (1973) ("[i]n fashioning a reapportionment plan or in choosing among plans, a district court should not pre-empt the legislative task nor intrude upon state policy any more than necessary") (internal

---

[4] The Supreme Court, however, has noted that, while census data is accurate at the time collected, it is not necessarily "a talismanic measure of the weight of a person's vote." *Gaffney v. Cummings*, 412 U.S. 735, 746 (1973). The Supreme Court's seeming recognition that there is no one set of "perfect" population data that must be used in equalizing districts only serves to further undermine Plaintiffs' assertion here that Texas is *required* to equalize districts using a particular set of population data.

[5] Of course, the rule Plaintiffs advocate for here is even more cumbersome and intrusive on the redistricting process than requiring a state to use one particular set of population data, as they instead ask the Court to hold that Texas must reapportion to equalize *both* total population *and* CVAP (or some other variant of data meant to approximate voter population). *See* Response at 13. Again, any such rule is counter to the deference that the Supreme Court has repeatedly stated must be afforded the States in the districting process.

5

quotations and citations omitted); *Karcher*, 462 U.S. at 740 (Court must "defer to state legislative policies, so long as they are consistent with constitutional norms"); *Connor v. Finch*, 431 U.S. 407, 414-15 (1977) ("a state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality").

In sum, because all available authority, as well as applicable principles of deference and federalism, counsel entirely against imposing the unprecedented rule of law Plaintiffs advocate for in this case, Plaintiffs have failed to state a claim upon which relief can be granted and this suit should be summarily dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Motion to Dismiss, Defendants respectfully request the Court DISMISS this suit in its entirety.

> Respectfully submitted,
>
> GREG ABBOTT
> Attorney General of Texas
>
> DANIEL T. HODGE
> First Assistant Attorney General
>
> DAVID C. MATTAX
> Deputy Attorney General for Defense Litigation
>
> JAMES "BEAU" ECCLES
> Division Chief - General Litigation

/s/ Erika M. Kane
ERIKA M. KANE
Texas Bar No. 24050850
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120
(512) 320-0667 FAX
erika.kane@texasattorneygeneral.gov

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and delivered via CM/ECF on June 5, 2014, to:

Meredith B. Parenti
PARENTI LAW PLLC
P.O. Box 19152
Houston, Texas 77224

Bert W. Rein
William S. Consovoy
Brendan J. Morrissey
WILEY REIN LLP
1776 K. Street, NW
Washington, DC 20006

/s/ Erika M. Kane
ERIKA M. KANE
Assistant Attorney General

7