## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

SUE EVENWEL; EDWARD PFENNINGER,

                Plaintiffs,

v.

RICK PERRY, in his official capacity as
Governor of Texas; NANDITA BERRY, in her
official capacity as Texas Secretary of State,

                Defendants.

Civil Action No. 1:14-cv-335

## PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, Plaintiffs Sue Evenwel and Edward Pfenninger ("Plaintiffs") request that the Court deny the Motion to Intervene ("Mot.") filed by the Texas Senate Hispanic Caucus, Armando Garza, Francisco Guajardo, Reynaldo Guerra, Evelyn Jones, Sofia Reyes McDermott, and Cassandra Chrostowski ("Movants").

## I.     INTRODUCTION

Movants have failed to establish any valid ground under Rule 24 for intervention in this proceeding.  Movants claim to be concerned that recognition of a constitutional right to voting equality would necessarily require Defendants to create districts of unequal population.  That conclusion is, however, entirely speculative and is refuted by the Complaint and supporting affidavit of Peter A. Morrison, Ph.D.  *See* Complaint Exhibit A.  Movants have provided no basis for injecting further contingent issues about their claimed right to "representational equality" into this proceeding at this time, and have failed to explain how their intervention could avoid delay or prejudice to Plaintiffs' rights.

2

In addition, Movants rely upon the assertion of a constitutional right to "representational equality" among Texas Senate districts that the Supreme Court never has recognized and that contradicts the seminal principle that standing in reapportionment challenges is available to voters, not district residents.  *See Baker v. Carr*, 369 U.S. 186 (1962).  Moreover, in defending Plan S172, the existing Defendants vigorously seek to safeguard a plan which Movants acknowledge is consistent with the right they assert.  Movants' speculation that Defendants may take a different future position is no basis for permitting them now to delay and complicate this proceeding.   If Movants wish to make additional legal arguments to support Defendants' position, they should seek leave (which Plaintiffs would not oppose) to file as *amicus curiae* at an appropriate time.[1]

## II.   ARGUMENT

### A.   Movants Are Not Entitled To Intervention As Of Right.

Movants have not satisfied the criteria for intervention as of right under Rule 24(a)(2) for at least three reasons: (1) this litigation will have only a speculative effect on Movants' alleged protected interest; (2) their alleged interest is not legally cognizable; and (3) the State of Texas will adequately protect any legally cognizable interests Movants possess.

#### 1.   Any effect of this litigation on Movants' interest is entirely speculative.

Because Plaintiffs are not seeking a specific redistricting, let alone one that would necessarily lead to inequality of total population across newly created districts, this litigation alone could not impair any legal interest in Senate districts with equal total population.

---

[1]     The Court should initially consider holding the Motion to Intervene in abeyance pending the resolution of the motion to dismiss.   If the Motion to Dismiss is granted, Movants' intervention motion (which was not filed until after the motion to dismiss was briefed and argued) will be moot.

3

Movants claim that this litigation will force them into revised districts that, among the things, will "reduce [their] access to their elected representatives or reduce [their] ability to represent their constituents." Mot. at 10. This premise is flawed. This case presents two narrow (albeit important) legal questions: (1) whether the Texas Legislature violated the Fourteenth Amendment by apportioning Senate districts based solely on total population without consideration of voter population; and (2) if so, whether the massive deviations in voter population between the Senate districts are nevertheless sustainable under the settled framework for reviewing such issues. If Plaintiffs prevail, the matter will be returned to the Texas Legislature to redraw the Senate map using constitutionally appropriate districting criteria. There is thus no threat that this Court will be asked to weigh in on Movants' separate, unrelated interest in representational equality.

In fact, if Plaintiffs prevail and the Texas Legislature is given the opportunity to re-draw the Senate districts, Plaintiffs have demonstrated that the constitutional interest in voter equality and Movants' asserted interest in representational equality can *both* be accommodated. *See* Declaration of Peter A. Morrison, Ph.D., Complaint Exhibit A. Texas is entitled to take factors other than the voting equality doctrine into consideration when it engages in apportionment. The Texas Legislature might well conclude that the representational interests Movants champion provide a justifiable basis for adjusting the Senate districts to ensure that *both* voter and total population are equalized to the maximum extent feasible.

Movants are therefore wrong to suggest that a judgment favoring Plaintiffs will force them "to represent, vote and/or reside in districts that are over-populated, and where the quality of their political representation will be substantially reduced when compared with voters living in areas with proportionally fewer children and noncitizens." Mot. at 7. That is unfounded

speculation.  Indeed, Movants' argument as to why their legal interests will be impaired is doubly indirect; it depends on legislative action that would follow this lawsuit, and then only in the improbable event that that legislative action impairs their interests.  The "interest required to intervene as of right is a 'direct' interest.   By definition, an interest is not direct when it is contingent on the outcome of a subsequent lawsuit."  *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (requiring a "'direct, non-contingent, substantial and legally protectable' interest") (quoting *Dilks v. Aloha Airlines, Inc.*, 642 F.2d 1155, 1157 (9th Cir. 1981)).  Movants' interest is not "direct" in any sense of the word.

Finally, allowing Movants to introduce issues and evidence relating to what the Texas Legislature *might* do if required to recognize voting equality would needlessly complicate and delay these proceedings, to the original parties' detriment.  A court granting party status to those not "truly aggrieved" will be "repeatedly required to respond to vague hypotheticals and speculation rather than concrete and actual harms."  *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 825 n.75 (S.D. Ind. 2006).  Where, as here, Movants' asserted interest is not sufficiently direct, intervention must be denied.

### 2.    Movants cannot demonstrate a protectable interest.

Even more fundamentally, Movants lack "a direct, substantial, legally protectable interest in the proceedings."  *New Orleans Pub. Serv.*, 732 F.2d at 463.  Movants principally claim that Plaintiffs seek to "reduce [their] access to [their] elected representatives or reduce [their] ability to represent their constituents."  Mot. at 10.  But there is no judicially protectable right of "access."   The Fourteenth Amendment shields *voters* against dilution of their *vote*—not constituents against dilution of "access" to their elected representatives.  *See Reynolds v. Sims*, 377 U.S. 533, 568 (1964) ("[A]n individual's right to vote for state legislators is

unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living [in] other parts of the State."); *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 56 (1970) (holding that "when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as practicable, that equal numbers of voters can vote for proportionally equal numbers of officials"); *see also Garza v. County of Los Angeles*, 918 F.2d 763, 783-84 (9th Cir. 1991) (Kozinski, J., dissenting).

Accordingly, there is no freestanding right under the Constitution to "equalized total population across Senate districts." Mot. at 2. Rather, use of total population as the districting base has always been understood as a *means* of protecting the rights of voters to an equally weighted vote, as "eligible voters will frequently track the total population evenly." *Chen v. City of Houston*, 206 F.3d 502, 525 (5th Cir. 2000). "[T]he overriding objective must be substantial equality of population among the various districts, *so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State*." *Reynolds*, 377 U.S. at 579 (emphasis added); *see also Garza*, 918 F.2d at 783 (Kozinski, J., dissenting). When total population falls short, as it does here, other data must be incorporated into the districting process to ensure the rights of voters under the Equal Protection Clause are not infringed.

Movants' assertion that the one-person, one-vote right the Supreme Court fashioned to protect eligible voters can be distorted into a rule protecting "access" between constituents and representatives thus has no constitutional foundation. The theory "at the core of one person, one vote is the principle of electoral equality, not that of equality of representation." *Garza*, 918 F.2d at 782 (Kozinski, J., dissenting). There is simply no other way to explain *Burns v. Richardson*, 384 U.S. 73 (1966), which approved an apportionment plan that clearly disparaged the supposed

6

"access" rights of Oahu residents. *See generally* Opp. to Mot. to Dismiss at 8-9, Dkt. 20 (May 29, 2014). Movants claim that Plaintiffs are attempting to "overturn fifty years of established precedent on the rule of apportionment of population in redistricting." Mot. at 1. To the contrary, Plaintiffs merely seek a judicial declaration that, under *Baker* and *Reynolds*, the elector population should be the "measure of population" used for determining compliance with the Equal Protection Clause. It is Movants, not Plaintiffs, who seek to redefine *Reynolds*.[2]

### 3. Texas adequately represents Movants' interest in this litigation.

Intervention of right is also inappropriate because the Defendants adequately represent any interest Movants might have in this matter. Movants incorrectly claim that they meet this requirement because they plan to advance distinct legal arguments. Mot. at 12-13. Representation is inadequate when the party and intervenor seek different *outcomes* in the litigation—not when they pursue different legal theories. *See Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests."); *Georgia v. Ashcroft*, 195 F. Supp. 2d 25, 32-33 (D.D.C. 2002). Here, there is no question that Defendants and Movants both seek to uphold Plan S172. That the State and private citizens might face different costs or harms from an adverse ruling also is not a basis for finding

---

[2]     The fact that Movants' "access" theory would extend one-person, one-vote protection to minors and others ineligible to vote demonstrates just how divorced it is from the seminal decisions on which it purports to rely. *Baker* held that the plaintiffs had standing to bring their one-person, one-vote claim as "voters of the State of Tennessee" and found that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." 369 U.S. at 206. Thus, it was the plaintiffs' status as *voters* that afforded them Article III standing and it was their right to an undiluted *vote* under the Fourteenth Amendment that made that claim viable. *See Reynolds*, 377 U.S. at 562 ("It would appear extraordinary to suggest that a State could be constitutionally permitted to enact a law providing that certain of the State's voters could vote two, five, or 10 times for their legislative representatives, while voters living elsewhere could vote only once."). The notion that a constitutional doctrine predicated on an injury suffered distinctly by voters includes a right to "access" for non-voters that trumps the anti-dilution rights of those voters is untenable and unsupported.

7

representation inadequate.  Mot. at 13-14.  If it were, intervention of right would be warranted every time private parties have an interest in seeing state or federal law upheld.  To the extent Movants suggest that Defendants may abandon Plan S172, Mot. at 12-13, that accusation is baseless.  The Texas Attorney General has vigorously defended Plan S172.  There is every indication that he will continue to do so before this Court and on appeal.

### B.    Movants Are Not Entitled To Permissive Intervention.

Movants' lack of a legally cognizable interest in the outcome of this case also means that they should not be allowed to permissively intervene.  Furthermore, Movants seek permissive intervention to introduce "evidence from the perspective of state senators, registered voters and constituents of Texas, including voters and residents of districts that have high numbers of children and non-citizens."  Mot. at 15.  But that evidence is irrelevant to whether voter population is the appropriate apportionment base under *Reynolds*.  That is a purely legal issue. Nothing that Movants plan to introduce could overcome the fact that the Texas Legislature labored under the legally mistaken impression that the Fourteenth Amendment required it to ignore voter population, *see* Complaint ¶¶ 20-21, and hence did not "make a good-faith effort" to apportion districts with roughly equal numbers of voters, *Kirkpatrick v. Preisler*, 394 U.S. 526, 530-31 (1969).  In fact, any post-hoc evidence offered by Movants would not be admissible to defend Plan S172's deviations under *any* legal theory because it was not before the legislature when it drew the map in dispute.  Movants' desire to needlessly complicate and delay this matter through introduction of irrelevant evidence justifies denying permissive intervention.

If the Court were to allow permissive intervention, however, it should exercise its considerable discretion to limit Movants' participation.  *See Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 353 (5th Cir. 1997) ("It is undisputed that virtually any condition may be

attached to a grant of permissive intervention."); *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) ("When granting an application for permissive intervention, a federal district court is able to impose almost any condition, including the limitation of discovery."). The Court should: (1) require Movants to not duplicate the efforts of Defendants or engage in cumulative briefing; (2) prevent Movants from interjecting new issues into the case; and, (3) prevent Movants from attempting to convert what should be a purely legal dispute into a factual controversy about collateral issues.

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion to Intervene.

Respectfully submitted,

DATED:  July 14, 2014                    /s/ Meredith B. Parenti
                                         Meredith B. Parenti
                                         Texas Bar No. 00797202
                                         PARENTI LAW PLLC
                                         P.O. Box 19152
                                         Houston, TX 77224
                                         Tel.: (281) 224-5848
                                         Fax: (281) 605-5677
                                         meredith@parentilaw.com

                                         Bert W. Rein (pro hac vice)
                                         William S. Consovoy (pro hac vice)
                                         Brendan J. Morrissey (pro hac vice)
                                         WILEY REIN LLP
                                         1776 K Street, NW
                                         Washington, DC  20006
                                         Tel.: (202) 719-7000
                                         Fax: (202) 719-7049

                                         **ATTORNEYS FOR PLAINTIFFS**

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of July, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Erika Kane
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548


***Counsel for Defendants Rick Perry and Nandita Berry***

*/s/ Meredith B. Parenti*
