1           **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE WESTERN DISTRICT OF TEXAS**
2                      **AUSTIN DIVISION**

3  SUE EVENWEL, EDWARD PFENNINGER,     ) AU:14-CV-00335-LY-CH-MHS
                                       )
4     Plaintiffs,                      )
                                       )
5  VS.                                 ) AUSTIN, TEXAS
                                       )
6  RICK PERRY, NANDITA BERRY,          )
                                       )
7     Defendants.                      ) JUNE 25, 2014

8           *********************************************
                   TRANSCRIPT OF MOTIONS HEARING
9
                   BEFORE THE HONORABLE
10           MICHAEL H. SCHNEIDER, LEE YEAKEL
                   & CATHARINA HAYNES,
11          *********************************************

12  APPEARANCES:

13  FOR THE PLAINTIFFS:        MEREDITH BISHOP PARENTI
                               PARENTI LAW PLLC
14                             P.O. BOX 19152
                               HOUSTON, TEXAS 77224
15
                               WILLIAM S. CONSOVOY
16                             BRENDAN J. MORRISSEY
                               WILEY REIN LLP
17                             1776 K STREET, N.W.
                               WASHINGTON, D.C. 20006
18
    FOR THE DEFENDANTS:        ERIKA M. KANE
19                             ANGELA V. COLMENERO
                               ASSISTANT ATTORNEY GENERAL
20                             300 WEST 15TH STREET, 11TH FLOOR
                               AUSTIN, TEXAS 78701
21
    COURT REPORTER:            ARLINDA RODRIGUEZ, CSR
22                             501 WEST 5TH STREET, SUITE 4152
                               AUSTIN, TEXAS 78701
23                             (512) 391-8791

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.

```
09:00:12   1   (Open Court)
09:00:12   2           JUDGE YEAKEL:  The Court calls for argument on
09:00:15   3   Defendants' motion to dismiss, Cause Number 14-CV-335, Evenwel
09:00:21   4   and others v. Perry and others.
09:00:24   5           Is the movant ready?
09:00:26   6           MS. KANE:  The movant is ready, Your Honor.  Thank
09:00:28   7   you.
09:00:28   8           JUDGE YEAKEL:  And is the respondent ready?
09:00:30   9           MR. CONSOVOY:  We are, Your Honor.
09:00:32  10           JUDGE YEAKEL:  All right.  We have allocated 30
09:00:35  11   minutes to the side for argument this morning.  The movant may
09:00:40  12   divide the movant's time however the movant sees fit.  And at
09:00:43  13   this time, if you're ready to proceed, we will proceed.
09:00:46  14   Ms. Kane.
09:00:47  15           MS. KANE:  Thank you, Your Honor.  May it please the
09:00:55  16   Court:
09:00:56  17           The defendants -- the State's arguments put forward
09:01:00  18   in its motion to dismiss are relatively straightforward.  The
09:01:03  19   State asks this court to dismiss the suit for failure to state
09:01:05  20   a claim because plaintiffs' equal protection claim is based on
09:01:09  21   a legal theory that has never been recognized by any federal
09:01:11  22   court.
09:01:11  23           To the contrary, the theory put forward by the
09:01:14  24   plaintiffs in this case has been essentially rejected by three
09:01:17  25   circuits -- the Fourth, Fifth, and Ninth circuits.  Further,
```

09:01:20  1   pursuant to language contained in the Supreme Court's 1966

09:01:23  2   opinion, *Burns V. Richardson*, that court has made no

09:01:29  3   distinction -- quote, no distinction between the acceptability,

09:01:30  4   unquote, of State's decision to use total population data as an

09:01:34  5   apportionment base for redistricting versus other sets of data

09:01:38  6   such as voter population or citizen population.  In the Supreme

09:01:43  7   Court's words in *Burns*, it found no, quote, constitutionally

09:01:45  8   founded reason, unquote, to interfere with such a choice.

09:01:48  9           To the extent the plaintiffs here assert that this

09:01:50  10   case is distinguishable because they assert Texas can draw its'

09:01:54  11   Senate districts to equalize both total population and citizen

09:01:58  12   voting age population or some other set of voter citizenship

09:02:01  13   data, any rule of law -- of law adopted by this court that

09:02:05  14   would require the State to equalize both sets of population in

09:02:08  15   order to satisfy equal protection would be counter to

09:02:13  16   principles of deference to state legislative choices.

09:02:15  17           JUDGE HAYNES:  Let me ask you this:  Regardless of

09:02:17  18   whether it's required constitutionally, is it doable?  I mean,

09:02:18  19   do you agree that it is doable to equalize both sets of data?

09:02:22  20           MS. KANE:  I think for purposes of the posture of

09:02:24  21   this motion, we have to take their factual allegations as true.

09:02:27  22   So whether or not ultimately that will be proven, I think for

09:02:30  23   purposes of our motion, we have to assume that that would

09:02:33  24   technically be correct.

09:02:34  25           And so our position is, even assuming that is

| | | |
|---|---|---|
| 09:02:37 | 1 | correct, that there is no constitutionally founded reason to |
| 09:02:41 | 2 | require the state to draw their maps on -- in that way.  And |
| 09:02:45 | 3 | so, yes, that's where we are -- what our position is at this |
| 09:02:49 | 4 | moment.  That could change if this case proceeds, of course, to |
| 09:02:52 | 5 | summary judgment. |
| 09:02:53 | 6 | So taking the three main points essentially -- |
| 09:02:56 | 7 | JUDGE SCHNEIDER:  Let me interrupt just one second. |
| 09:02:58 | 8 | As Judge Haynes raised the question, is there any deviation |
| 09:03:05 | 9 | of -- that would concern you, I mean, at any level of the |
| 09:03:12 | 10 | disproportion or non-representation on the part of voters?  Is |
| 09:03:17 | 11 | there any percentage that would disturb you or raise an issue? |
| 09:03:22 | 12 | MS. KANE:  Your Honor, I think for purposes of the |
| 09:03:24 | 13 | one-person, one-vote challenge, the State's position is that so |
| 09:03:30 | 14 | long as one set of recognized viable population data is |
| 09:03:37 | 15 | equalized, that that satisfies that bar.  I think the issue |
| 09:03:40 | 16 | with respect to the CVAP data might have other implications in |
| 09:03:45 | 17 | other ways.  For example, in maybe Voter Registration Act type |
| 09:03:50 | 18 | claims or things of that nature.  But for purposes of the |
| 09:03:54 | 19 | one-vote, one-person challenge that's at issue here, the |
| 09:03:56 | 20 | State's position is that is not relevant to the determination |
| 09:03:59 | 21 | so long as the State can show or the evidence shows, as the |
| 09:04:02 | 22 | case is here, that a relevant set of population data, here |
| 09:04:06 | 23 | being the total population data, is equalized within |
| 09:04:09 | 24 | percentages allowed by the Supreme Court.  And it is in this |
| 09:04:12 | 25 | case. |

09:04:13  1          JUDGE SCHNEIDER:  Well, so you could never reach a

09:04:15  2    level that -- that bothered you -- a deviation that bothered

09:04:19  3    you?

09:04:20  4          MS. KANE:  Well, I think for purposes, again, of the

09:04:22  5    one-person, one-vote challenge, I don't think that there has

09:04:25  6    been a holding that would say that there is some threshold that

09:04:29  7    you could have total population data equalize and then some

09:04:33  8    deviation that meets some sort of ceiling or floor on deviation

09:04:40  9    that would then put you into a one-person, one-vote violation

09:04:46  10   based on what the Supreme Court has said thus far on this

09:04:49  11   issue.

09:04:49  12         JUDGE SCHNEIDER:  Okay.

09:04:51  13         JUDGE YEAKEL:  Well, what is the strongest

09:04:54  14   pronouncement by the Supreme Court that differs from just

09:04:58  15   looking at gross numbers of people -- so a variation on

09:05:05  16   one-person, one-vote?  What has the Supreme Court said that you

09:05:08  17   think is strongest that would mitigate in favor of changing a

09:05:15  18   system that is based solely on people in an area?

09:05:19  19         MS. KANE:  I don't think the -- so if I understand

09:05:21  20   the Court's question, what has the Supreme Court said that

09:05:25  21   might support that there is some sort of deviation that will

09:05:29  22   reach such a result -- or such a high mark in CVAP that you

09:05:33  23   need to consider that even though you need full total

09:05:35  24   population?  Is that what the Court is asking?

09:05:38  25         JUDGE YEAKEL:  Yeah.

| | | |
|---|---|---|
| 09:05:38 | 1 | MS. KANE: And I think the court hasn't given an |
| 09:05:40 | 2 | indication that there is that marker. And I think the *Burns* |
| 09:05:44 | 3 | case -- and the State agrees, frankly, with the Fifth Circuit |
| 09:05:47 | 4 | and the Fourth Circuit's interpretations of the *Burns* case in |
| 09:05:50 | 5 | both *Daly* in the Fourth Circuit and the *Chen* case in the Fifth |
| 09:05:55 | 6 | Circuit, in which that court looked at the language and the |
| 09:05:57 | 7 | very permissive and deferential language of the Supreme |
| 09:06:00 | 8 | Court -- and deliberately so, deferential language of the |
| 09:06:06 | 9 | Supreme Court in *Burns* -- to basically recognize that there is |
| 09:06:10 | 10 | a sphere here of deference that is given to the State |
| 09:06:16 | 11 | Legislature on which population data to use. |
| 09:06:18 | 12 | And, thus far, the Supreme Court has not said that |
| 09:06:21 | 13 | there is some number that might be hit where those -- for |
| 09:06:27 | 14 | example, voting age population and total population deviate -- |
| 09:06:30 | 15 | that would then require a state to equalize both sets of |
| 09:06:35 | 16 | population or to at least approximately equalize both |
| 09:06:39 | 17 | populations, if possible. The court has simply not indicated |
| 09:06:42 | 18 | that that is required under the Equal Protection Clause. |
| 09:06:46 | 19 | Now, I think -- |
| 09:06:47 | 20 | JUDGE HAYNES: So let me ask you this: Do you think |
| 09:06:49 | 21 | this case so insubstantial that it should not be -- have been |
| 09:06:53 | 22 | certified for a three-judge panel and should have just been |
| 09:06:55 | 23 | dismissed by Judge Yeakel. |
| 09:06:57 | 24 | MS. KANE: Well, I think that it would have been |
| 09:06:59 | 25 | entirely reasonable to do that. And I think if you look at the |

| | | |
|---|---|---|
| 09:07:07 | 1 | Second Circuit's case -- again, that was a federal |
| 09:07:09 | 2 | congressional redistricting case of *Kalson v. Paterson* which we |
| 09:07:10 | 3 | cite in our footnotes -- where there -- it was a slightly |
| 09:07:14 | 4 | different posture, I think, in terms of the argument made |
| 09:07:18 | 5 | because it was a very specific argument made that voting age |
| 09:07:22 | 6 | population should have been equalized and that was in itself a |
| 09:07:25 | 7 | one-person, one-vote violation.  But there the district court |
| 09:07:28 | 8 | judge, a single judge, dismissed that and the Second Circuit |
| 09:07:32 | 9 | affirmed that decision based on the fact that they found that |
| 09:07:34 | 10 | claim to be too insubstantial to require the certification of a |
| 09:07:38 | 11 | three-judge panel. |
| 09:07:39 | 12 |             So, given that, we're already at a place where |
| 09:07:41 | 13 | there's a three-judge panel in place.  So -- |
| 09:07:42 | 14 |             JUDGE HAYNES:  We drove to Austin; we may as well |
| 09:07:45 | 15 | hear the case, you think? |
| 09:07:46 | 16 |             MS. KANE:  So whether or not one could undo that at |
| 09:07:49 | 17 | this point, I think, is a question maybe -- |
| 09:07:50 | 18 |             JUDGE HAYNES:  Well, that was going to be my next |
| 09:07:52 | 19 | question.  And I'm just exploring the whole waterfront.  So |
| 09:07:55 | 20 | don't take anything from this question.  But if we got to that |
| 09:07:59 | 21 | point, where we felt it was so insubstantial that it could have |
| 09:08:01 | 22 | just been handled by one judge, is there a procedure for a |
| 09:08:04 | 23 | three-judge panel to rule that and then the one judge make his |
| 09:08:10 | 24 | ruling. |
| 09:08:10 | 25 |             MS. KANE:  I'm not aware of a case with that type of |

| | | |
|--|--|--|
| 09:08:14 | 1 | posture. I will say that the statute governing three-judge |
| 09:08:17 | 2 | panels does allow one judge to rule on certain matters. As the |
| 09:08:23 | 3 | *Kalson* case -- |
| 09:08:23 | 4 | JUDGE HAYNES: Right. But not obviously -- if this |
| 09:08:25 | 5 | is a three-judge matter, Judge Yeakel can rule on continuances |
| 09:08:29 | 6 | and scheduling and all that, but he can't rule on the ultimate |
| 09:08:32 | 7 | merits. However, if it should have been a one-judge matter in |
| 09:08:36 | 8 | the first place and the three-judge panel says that, then it |
| 09:08:38 | 9 | would seem like it goes back to the one judge and then he ... |
| 09:08:42 | 10 | MS. KANE: And the *Kalson* case certainly supports the |
| 09:08:45 | 11 | proposition that, should then the Fifth Circuit find that this |
| 09:08:48 | 12 | is an insubstantial question that was presented because an |
| 09:08:50 | 13 | order from one judge would go up to the Fifth Circuit -- and |
| 09:08:53 | 14 | one, frankly, might presume that the Fifth Circuit would say |
| 09:08:56 | 15 | that, given that they've rejected very similar claims to this |
| 09:08:59 | 16 | twice now -- then if they found that this was insubstantial, |
| 09:09:03 | 17 | then one judge disposing of this case would be permissible if |
| 09:09:06 | 18 | you look at the *Kalson* case as an example. |
| 09:09:10 | 19 | So while we're not advocating that that's the |
| 09:09:12 | 20 | necessary result here, we did want to point out a very similar |
| 09:09:15 | 21 | posture in the *Kalson* matter out of the Second Circuit because |
| 09:09:20 | 22 | it does appear to provide a particular avenue that might be |
| 09:09:23 | 23 | available as a resolution in this case. |
| 09:09:25 | 24 | Regardless -- |
| 09:09:27 | 25 | JUDGE HAYNES: Now, let me go to the other side. |

| | | |
|---|---|---|
| 09:09:29 | 1 | Let's say you lose this motion to dismiss and the plaintiffs |
| 09:09:32 | 2 | hit a home run in the case.  What -- you know, what does that |
| 09:09:37 | 3 | look like?  If we order the Legislature to consider CVAP and |
| 09:09:42 | 4 | not supplant total -- and I'm going to ask them about it.  As I |
| 09:09:47 | 5 | appreciate their argument, they're not saying you supplant |
| 09:09:50 | 6 | total population with CVAP.  It's just that it's supposed to be |
| 09:09:53 | 7 | considered.  What would that look like, and how would that |
| 09:09:56 | 8 | materialize in the course of the next legislative session? |
| 09:10:04 | 9 | MS. KANE:  Your Honor, I think that if this court |
| 09:10:05 | 10 | were to find that we have to consider CVAP, it opens up kind of |
| 09:10:08 | 11 | a world of potential possibilities as to how that might be |
| 09:10:12 | 12 | measured.  Because I think what we do know is that there is a |
| 09:10:16 | 13 | fairly broad world of discretion here that the legislature has |
| 09:10:22 | 14 | in terms of deviating even from an equalizing -- once you even |
| 09:10:26 | 15 | have a set of population data that is an approved apportionment |
| 09:10:29 | 16 | base, the states are allowed to deviate from equalizing if they |
| 09:10:34 | 17 | have sound policy reasons. |
| 09:10:35 | 18 | So now if we have a finding from this court or, |
| 09:10:38 | 19 | ultimately, the Supreme Court saying that we have to consider |
| 09:10:41 | 20 | not only total population data but, if the facts show a |
| 09:10:46 | 21 | particular deviation between CVAP and total population, we also |
| 09:10:50 | 22 | have to consider CVAP or some other, you know, set of voter |
| 09:10:53 | 23 | registration data -- if that is found, then I think the |
| 09:10:57 | 24 | corresponding rules that will then have to be kind of meted out |
| 09:11:02 | 25 | to determine how you determine compliance with the Equal |

| | | |
|---|---|---|
| 09:11:06 | 1 | Protection Clause, once you have two sets of population data at |
| 09:11:09 | 2 | issue, is really going to be an open question that is difficult |
| 09:11:13 | 3 | to discern at this point because we've never had, essentially, |
| 09:11:16 | 4 | two metrics upon which a state has to show compliance in order |
| 09:11:21 | 5 | to demonstrate compliance with the Equal Protection Clause. |
| 09:11:25 | 6 | JUDGE HAYNES:  Okay.  Let me add another sort of |
| 09:11:26 | 7 | layer here.  As I understand it, there's this *Davis* case in |
| 09:11:30 | 8 | Judge Garcia's court that's a three-judge panel of |
| 09:11:32 | 9 | Judges Smith, Rodriguez, and Garcia.  I may have that wrong. |
| 09:11:36 | 10 | MS. KANE:  That's correct. |
| 09:11:36 | 11 | JUDGE HAYNES:  I know there is a pending case |
| 09:11:38 | 12 | regarding the exact same districts. |
| 09:11:40 | 13 | MS. KANE:  Not the Senate districts.  There's a |
| 09:11:43 | 14 | House -- the House -- |
| 09:11:44 | 15 | JUDGE HAYNES:  But I thought that they wrote -- I |
| 09:11:47 | 16 | thought that that court wrote the thing that the state adopted. |
| 09:11:50 | 17 | MS. KANE:  Oh.  Excuse me.  Yes.  There is no longer |
| 09:11:53 | 18 | a challenge to the Senate map, but there was in the first |
| 09:11:56 | 19 | round. |
| 09:11:57 | 20 | JUDGE HAYNES:  Okay.  So what does -- so they wrote a |
| 09:11:58 | 21 | map, the legislature adopted it.  Then what happens if we say |
| 09:12:03 | 22 | we're going to undo that?  What happens to that case? |
| 09:12:05 | 23 | MS. KANE:  Well, the -- this precise type of |
| 09:12:09 | 24 | challenge was not at issue there.  It was a -- |
| 09:12:11 | 25 | JUDGE HAYNES:  No.  I know.  But you can only have |

09:12:13   1   one -- one district that we're voting in, I hope.

09:12:16   2                   MS. KANE:  Yes.

09:12:17   3                   JUDGE HAYNES:  So if they've written it to try to

09:12:19   4   deal with voting rights act issues and issues of minority

09:12:24   5   representation and so forth and that's been handled, then we

09:12:26   6   come over here, it's like the game where you're hitting the

09:12:29   7   head of the squirrel or whatever, where another thing pops up

09:12:32   8   so we come over here and say this.  Now does that then create

09:12:36   9   another issue over there, whether it's literally over there or

09:12:40   10  not?

09:12:40   11                  MS. KANE:  I don't know if it necessarily creates

09:12:42   12  another issue.  What I think that the Court is getting at is

09:12:44   13  language that you'll see in the *Daly* case out of the Fourth

09:12:48   14  Circuit that talks about a case called *Gaffney* in the Supreme

09:12:52   15  Court in which they express concern with this idea of requiring

09:12:57   16  basically another set of population data that had to be

09:13:01   17  equalized because, again, the further the courts go into this

09:13:06   18  judicial intervention in this sphere, then there is a question

09:13:09   19  as to -- as to what point does that end.

09:13:12   20                  And so the *Daly* court in its resolution of this

09:13:16   21  particular type of claim in which the argument was made that

09:13:18   22  voting age population should have been equalized instead of

09:13:21   23  total population specifically addressed this issue and said, if

09:13:24   24  you look at what the Supreme Court has done in this area, it's

09:13:27   25  consistently resisted this notion of judicial intervention

```
09:13:31   1  unless naturally necessary precisely because of this concern;
09:13:35   2  that, essentially, the more requirements you're imposing on a
09:13:40   3  state, then the further the, you know, judiciary is going to be
09:13:45   4  intervening into these matters.  And as it is, and this court
09:13:48   5  is well aware, redistricting litigation is fairly extensive as
09:13:52   6  it is.
09:13:52   7         So if the court were to impose yet another metric,
09:13:54   8  another line upon which the court must -- or the state must
09:13:59   9  comply, then that only again compounds this concern of judicial
09:14:03  10  intervention into a sphere that the Supreme Court has, again,
09:14:06  11  recognized time and again should be left to the discretion of
09:14:09  12  the state legislature whenever possible.
09:14:15  13         And for that reason in particular -- you know, as
09:14:16  14  best I can understand the plaintiff's argument in this case,
09:14:19  15  they're distinguishing their argument here from Daly, Chen, and
09:14:23  16  the Garza case out of the Ninth Circuit based on an argument
09:14:27  17  that the data at issue here presents a situation in which the
09:14:30  18  State could essentially draw a better map than currently exists
09:14:35  19  because it could equalize, theoretically, the CVAP population
09:14:40  20  and total population.
09:14:42  21         JUDGE HAYNES:  Okay.  So now I have another practical
09:14:44  22  question.  So when you let the circuit judge out of the room
09:14:47  23  and bring them into a trial court, we get practical.
09:14:50  24         We're in the middle of a Senate election as far as I
09:14:53  25  know.
```

| | | |
|---|---|---|
| 09:14:53 | 1 | MS. KANE:  Yes. |
| 09:14:54 | 2 | JUDGE HAYNES:  I live in a district where we had a |
| 09:14:56 | 3 | primary and a runoff and somebody is now the nominee for each |
| 09:14:59 | 4 | of the major parties.  What would happen to these people if |
| 09:15:04 | 5 | we're having to redraw -- I mean, because the legislature isn't |
| 09:15:07 | 6 | even going to meet between now and November unless I guess |
| 09:15:10 | 7 | they're ordered to.  I don't know.  Anyway, they're not |
| 09:15:13 | 8 | scheduled to meet.  So what happens to the coming election, the |
| 09:15:18 | 9 | November election, where we already have nominees at least for |
| 09:15:22 | 10 | one party in every district and possibly two or three parties |
| 09:15:25 | 11 | going into November? |
| 09:15:27 | 12 | MS. KANE:  I'll say this, Your Honor:  The plaintiffs |
| 09:15:28 | 13 | have not moved for preliminary injunction, and I'll leave this |
| 09:15:32 | 14 | to Plaintiffs to further explain.  There has been no indication |
| 09:15:36 | 15 | that there is an intention to, if this court were to find -- |
| 09:15:41 | 16 | frankly, if this court were to find, ultimately, that the State |
| 09:15:45 | 17 | was required to do this, I'm sure the State would ask for some |
| 09:15:47 | 18 | sort of stay of that for purposes of this legislative session |
| 09:15:52 | 19 | and we would have to get into that.  But I don't think that the |
| 09:15:55 | 20 | plaintiffs are necessarily pushing for this to have any effect |
| 09:15:58 | 21 | on this year's election cycle.  Whether or not it has an effect |
| 09:16:02 | 22 | on later cycles of course is going to be an open issue.  But I |
| 09:16:06 | 23 | don't think that is an issue squarely presented by the |
| 09:16:09 | 24 | plaintiff's request for relief in this case, at least at this |
| 09:16:12 | 25 | moment in time.  But, again, this is an issue that is raised |

09:16:17  1   anytime you have this type of litigation.  There's a lot of

09:16:22  2   administrative practicalities to implementing these rules.

09:16:25  3        I would -- so for purposes of just the points that

09:16:28  4   we've raised in our motion to dismiss, frankly, we think the

09:16:31  5   court can look to the *Burns* case and the language contained

09:16:37  6   therein to resolve this case, as the *Daly* court as the *Chen*

09:16:40  7   court did.  *Burns* specifically says the court found no

09:16:44  8   constitutionally founded reason to interfere with the state's

09:16:48  9   choices to include or exclude certain populations, such as

09:16:52  10  registered voters, aliens, things of that nature, from their

09:16:56  11  apportionment base.  And that is essentially what we have here.

09:16:59  12  The plaintiffs have pointed to no --

09:17:01  13       JUDGE YEAKEL:  Is your argument that -- is it your

09:17:05  14  argument that what *Burns* is basically saying is the courts can

09:17:10  15  look at this, but if the courts find that there is a valid

09:17:14  16  reason for what the legislature considered, we should leave it

09:17:17  17  alone as opposed to developing a whole new checklist that

09:17:22  18  legislative bodies should have to go through and account for in

09:17:25  19  every case?

09:17:26  20       MS. KANE:  Yes.

09:17:27  21       JUDGE YEAKEL:  We look at it on a-redistricting-plan-

09:17:30  22  by-redistricting-plan basis to see if it meets the test in

09:17:34  23  *Burns*?

09:17:34  24       MS. KANE:  Yes.  And I think what the court in *Burns*

09:17:36  25  is saying that, of course, I think there's a reference, for

09:17:39  1  example, in the plaintiff's response to our motion in which

09:17:43  2  they say, what the State is arguing, essentially, is that, for

09:17:45  3  example, it could only include property owners in its

09:17:48  4  apportionment base and that wouldn't be judicial reviewable.

09:17:51  5          That's, frankly, not what we're saying.  What we're

09:17:54  6  saying is, of course, there are decisions, and the *Burns* court

09:17:57  7  points to a case in which Texas had actually excluded

09:18:00  8  military -- enlisted military persons who were citizens -- in

09:18:05  9  residents of Texas from their apportionment base.  That was

09:18:07  10  found to be constitutionally infirm because you had qualified

09:18:10  11  voters who were being excluded from the apportionment base.

09:18:13  12          So the *Burns* court has clearly signaled that there

09:18:15  13  are -- there could be populations that, if you exclude them

09:18:18  14  from your apportionment base, are going to be grounds for

09:18:21  15  judicial intervention.  However, the plaintiffs in this case

09:18:25  16  have pointed to no such populations that the Supreme Court has

09:18:28  17  indicated should -- are impermissibly included or excluded from

09:18:33  18  the total population apportionment base that Texas used to draw

09:18:37  19  its Senate maps.  And unless and until that is identified, the

09:18:40  20  *Burns* court indicates -- or its language seems to clearly

09:18:43  21  indicate that the State has discretion to decide which

09:18:48  22  population it wishes to use, so long as it abides by not

09:18:53  23  excluding or including population the constitution expressly

09:18:57  24  forbids.

09:18:58  25          JUDGE YEAKEL:  So we should be reactive on a

```
09:19:00   1   plan-by-plan basis, not proactive, in coming up with a set of
09:19:05   2   rules which must be done by each state legislature and each
09:19:09   3   state, regardless of its individual situation?
09:19:11   4            MS. KANE:  Certainly, Your Honor.  And, again, the
09:19:14   5   cases time and again from the Supreme Court used the word
09:19:17   6   deference, and that is what is at play here.  And, again, that
09:19:21   7   is what the Chen court and the Daly court also looked at.
09:19:24   8            JUDGE HAYNES:  And isn't that what happened in Davis?
09:19:26   9   I mean, it's kind of an interesting fact pattern because the --
09:19:28  10   the district court writes an interim map.
09:19:32  11            MS. KANE:  Yes.
09:19:33  12            JUDGE HAYNES:  The Supreme Court says you didn't give
09:19:36  13   enough deference, and then the legislature adopts that map
09:19:39  14   anyway.
09:19:39  15            MS. KANE:  I'm sorry.  For which case, Your Honor?
09:19:42  16            JUDGE HAYNES:  Well, I think it was Perez to begin
09:19:44  17   with and now is Davis.
09:19:46  18            MS. KANE:  The current case, you mean?
09:19:48  19            JUDGE HAYNES:  Yeah.
09:19:48  20            MS. KANE:  The current redistricting case?
09:19:50  21            JUDGE HAYNES:  Well, the current.  You know, it's
09:19:51  22   been going on for so many years.  But it had one -- at least
09:19:55  23   one iteration in the Supreme Court that I know of.
09:19:56  24            MS. KANE:  Yes, it has.
09:19:57  25            JUDGE HAYNES:  And I thought the import of that was,
```

| | | |
|---|---|---|
| 09:19:59 | 1 | even in a situation where it's been established that there are |
| 09:20:03 | 2 | Voting Rights Act problems with what the legislature did, you |
| 09:20:06 | 3 | still can't ignore -- if you're over here in district X that |
| 09:20:10 | 4 | doesn't have that problem, you can't suddenly run around |
| 09:20:14 | 5 | redrawing that unless it's necessary to deal with district Y |
| 09:20:17 | 6 | that has the problem. |
| 09:20:19 | 7 | MS. KANE:  Yes. |
| 09:20:19 | 8 | JUDGE HAYNES:  Because you have to start from the map |
| 09:20:21 | 9 | the legislature did. |
| 09:20:23 | 10 | MS. KANE:  Yes.  Again -- |
| 09:20:24 | 11 | JUDGE HAYNES:  But then the legislature adopted the |
| 09:20:26 | 12 | map that the Supreme Court essentially tossed out, right? |
| 09:20:28 | 13 | MS. KANE:  Essentially, yes. |
| 09:20:29 | 14 | JUDGE HAYNES:  It's an interesting fact pattern. |
| 09:20:31 | 15 | MS. KANE:  Yes.  And I think, again, what the history |
| 09:20:34 | 16 | of these cases show, particularly in one-person, one-vote |
| 09:20:37 | 17 | cases, the ones we've cited and, frankly, the plaintiffs have a |
| 09:20:40 | 18 | different interpretation of, it's our position that they, |
| 09:20:43 | 19 | again, expressly time and again talk about this issue of |
| 09:20:46 | 20 | deference. |
| 09:20:46 | 21 | Now, should -- I will note, too, that the Supreme |
| 09:20:48 | 22 | Court has had three opportunities to accept petitions for |
| 09:20:55 | 23 | *certiorari* on this issue in the *Garza* case from the Ninth |
| 09:20:57 | 24 | Circuit years ago, in the *Chen* case, and just last year in the |
| 09:21:02 | 25 | *Lepak* case out of the Fifth Circuit.  It has rejected those |

09:21:06  1   opportunities every time.

09:21:08  2          Should the Supreme Court perhaps decide eventually to

09:21:09  3   write on this issue, we might be in a different world.  But the

09:21:11  4   current world that exists just provides no legal grounds upon

09:21:14  5   which to impose the rule that the plaintiffs are advocating for

09:21:17  6   in this case.  And so that's why the State is here asserting

09:21:21  7   that it's proper to resolve this case on 12(b)(6) grounds.

09:21:25  8          JUDGE HAYNES:  Let me ask you more along these lines.

09:21:28  9   I mean, this *Perez*, *Davis*, whatever it is, the thing in

09:21:30  10  Judge Garcia's court, has been going on for quite some time.

09:21:33  11  It's received a fair amount of publicity.  Is there any

09:21:36  12  equitable or other sort of rule that would require people to

09:21:39  13  bring their -- their claim in that case?  In other words --

09:21:42  14  because, as I said, there's going to be one map for Senate

09:21:45  15  District 2, 3, 4, 10.  And you can't -- it seems to me,

09:21:49  16  practically, you can't have cases all over the State drawing

09:21:52  17  the same map.

09:21:53  18          MS. KANE:  Certainly, Your Honor.  I think in this

09:21:55  19  case, if -- if the Senate map was still at issue and there was

09:22:00  20  a lot of controversy about the Senate map, I think there would

09:22:04  21  be questions about, at least at minimum, consolidation of this

09:22:07  22  case with the San Antonio -- the matter that's still pending in

09:22:10  23  San Antonio.  Because there is no current live controversy

09:22:14  24  about any Senate district lines, we did not ask for that.

09:22:18  25          But I think there were, if I'm not mistaken, a series

| | | |
|---|---|---|
| 09:22:22 | 1 | of cases that were filed in federal courts which related to the |
| 09:22:27 | 2 | maps back in 2011.  Those cases ultimately were all |
| 09:22:30 | 3 | consolidated in San Antonio for this very reason, that you need |
| 09:22:33 | 4 | to have one court really looking at them.  But in this case the |
| 09:22:36 | 5 | Senate map is not in controversy at this time.  That's the only |
| 09:22:41 | 6 | map that's not in controversy at this time. |
| 09:22:43 | 7 | JUDGE HAYNES:  So that's why they picked it.  I've |
| 09:22:46 | 8 | been wondering. |
| 09:22:47 | 9 | MS. KANE:  One would surmise. |
| 09:22:48 | 10 | But that is really -- our argument is fairly |
| 09:22:51 | 11 | straightforward.  I don't want to take up any more of the |
| 09:22:53 | 12 | court's time.  I'm going to reserve the rest of my time for |
| 09:22:56 | 13 | rebuttal unless the court have any further questions. |
| 09:22:59 | 14 | JUDGE YEAKEL:  Thank you.  We'll hear from the |
| 09:23:00 | 15 | respondent. |
| 09:23:06 | 16 | MR. CONSOVOY:  Good Morning, Your Honors.  May it |
| 09:23:07 | 17 | please the Court, William Consovoy on behalf of the plaintiffs. |
| 09:23:11 | 18 | The principal defect and the argument raised by the |
| 09:23:14 | 19 | State that it fails to grapple with the fundamental right |
| 09:23:16 | 20 | protected by the one-person, one-vote principle, as established |
| 09:23:19 | 21 | in *Baker v. Carr* and *Reynolds v. Sims*.  That right is the right |
| 09:23:24 | 22 | of a voter to an equally weighted vote. |
| 09:23:26 | 23 | Under the State's position, if there was district A |
| 09:23:29 | 24 | with a million total population and district B with a million |
| 09:23:32 | 25 | total population, and district A had one voter and district B |

09:23:38 1   had a million voters, we would lose that case.  The one-person,

09:23:41 2   one-vote right would have been protected because they chose

09:23:44 3   total population.  That argument cannot be squared with either

09:23:48 4   *Baker*, which establishes the judiciability of the claim or

09:23:52 5   *Reynolds* --

09:23:53 6          JUDGE YEAKEL:  So you modify or take literally

09:23:59 7   one-person, one-vote and say that we should only look at

09:24:04 8   voters?

09:24:06 9          MR. CONSOVOY:  We believe that the -- what is

09:24:08 10  fundamentally protected by *Reynolds v. Sims* is voters.  We do

09:24:11 11  not believe the State can only consider that.  We believe the

09:24:14 12  State can also consider a multitude of other factors, including

09:24:17 13  total population.  The Supreme Court has made clear that there

09:24:20 14  is deference to the legislature.  They can look at county

09:24:23 15  lines.  They can look at communities of interest.  Legislatures

09:24:25 16  look at a multitude of factors.  And total population could be

09:24:29 17  one of them.

09:24:29 18         JUDGE HAYNES:  Okay.  And that leads me to my

09:24:31 19  practical question.  So you hit a home run, we rule exactly as

09:24:34 20  you've requested in your complaint, that the legislature is to

09:24:37 21  consider CVAP.  How is that even enforceable?  I mean, I don't

09:24:42 22  even understand what that means.  I could -- the legislature

09:24:45 23  can sit there and have some professor come in and present CVAP

09:24:48 24  and they all sit in their seats and listen attentively.  Now

09:24:52 25  have they considered it?  Are they now in compliance with the

| | | |
|---|---|---|
| 09:24:55 | 1 | order, and then they go off and enter a map that looks a lot |
| 09:24:58 | 2 | like the one you're challenging?  Or do they have to show they |
| 09:25:01 | 3 | took some number?  I mean, how do they consider it? |
| 09:25:05 | 4 | MR. CONSOVOY:  Well, I think what our position is -- |
| 09:25:07 | 5 | and I'm glad I have a chance to clear this up -- is that it was |
| 09:25:10 | 6 | a defect simply to not consider it.  That alone, since it's a |
| 09:25:14 | 7 | constitutionally protected right and this is an equal |
| 09:25:17 | 8 | protection matter, the failure to take into account a |
| 09:25:20 | 9 | constitutionally protected interest -- |
| 09:25:21 | 10 | JUDGE YEAKEL:  Well, how do we know that?  How do we |
| 09:25:23 | 11 | know they didn't just talk about it? |
| 09:25:24 | 12 | MR. CONSOVOY:  The 1981 Texas Attorney General |
| 09:25:27 | 13 | opinion told them that they were not allowed to consider it. |
| 09:25:29 | 14 | They then repealed -- this Texas Constitution used to require |
| 09:25:32 | 15 | consideration of equalizing voter.  In 1981 the Texas Attorney |
| 09:25:37 | 16 | General issued an opinion saying that was unconstitutional. |
| 09:25:40 | 17 | JUDGE HAYNES:  But it wasn't a matter of consider. |
| 09:25:41 | 18 | It was use. |
| 09:25:42 | 19 | MR. CONSOVOY:  We believe first consider, then use, |
| 09:25:45 | 20 | if feasible.  And the question here is -- now, we think that |
| 09:25:49 | 21 | Texas would have no argument as to why it's not feasible. |
| 09:25:52 | 22 | That's why we put it in the declaration. |
| 09:25:54 | 23 | JUDGE HAYNES:  I think there's another layer here, |
| 09:25:56 | 24 | and it goes back to -- maybe I'm the only one who thinks the |
| 09:25:59 | 25 | *Perez* case -- *Perez*, slash, *Davis* case has any relevance here. |

09:26:02  1  But the court drew the map that the legislature adopted.  So

09:26:05  2  are we going to say the court didn't consider the proper

09:26:09  3  constitutional aspects?  I mean, the Supreme Court said they

09:26:10  4  didn't give enough deference to the legislature.  I get that.

09:26:13  5       But nobody has said they didn't consider the

09:26:15  6  proper -- I mean, the three Article III judges sat around not

09:26:21  7  considering the Federal Constitution in what they drew.  And if

09:26:23  8  that's what the State adopts, isn't it kind of weird for a

09:26:25  9  different set of three judges to say, Hah.  You did what the

09:26:29  10  judges told you to, but we're going to come back and make you

09:26:31  11  do it again?

09:26:32  12       MR. CONSOVOY:  So in that case the court redrew the

09:26:34  13  map to solve a section 5 of the Voting Rights Act problem.  Of

09:26:38  14  course, section 5 has been ruled unconstitutional.  So the

09:26:42  15  basis -- the initial basis for that interim map, if it arose

09:26:45  16  now, like if there was this ping-pong concerning that, wouldn't

09:26:48  17  even exist.

09:26:49  18       Secondly, the Senate map was not before the Supreme

09:26:52  19  Court.  It was the only map that was not challenged by Texas on

09:26:54  20  appeal.  So when the Supreme Court raised its concern, it was

09:26:57  21  about the Congressional maps and the State House map, not this

09:27:01  22  map at all.  And then after that litigation ended, Texas

09:27:03  23  decided, we're going to adopt the interim map as our own which

09:27:08  24  creates a new map for Texas that could be challenged

09:27:11  25  independently, which occurs all the time.  And so there's

| | | |
|---|---|---|
| 09:27:14 | 1 | nothing really that unusual. |
| 09:27:15 | 2 | JUDGE HAYNES:  It's like the arcade game where |
| 09:27:16 | 3 | you're -- I don't remember what it is -- a mole, a squirrel, |
| 09:27:19 | 4 | somebody -- and before when I said "hitting a squirrel," I |
| 09:27:22 | 5 | didn't mean a real one.  I meant an arcade game, just to be |
| 09:27:26 | 6 | clear. |
| 09:27:26 | 7 | But isn't this like that? |
| 09:27:27 | 8 | MR. CONSOVOY:  I don't think so, Your Honor. |
| 09:27:29 | 9 | JUDGE HAYNES:  We hit something, we solve this |
| 09:27:31 | 10 | problem, now whoosh over here, we've got this other problem. |
| 09:27:32 | 11 | Okay.  Now we'll solve this problem and we're going to get |
| 09:27:34 | 12 | another.  Because although they repealed the preclearance, they |
| 09:27:37 | 13 | never repealed -- or "repeal" is the wrong word.  The Supreme |
| 09:27:39 | 14 | Court sort of invalidated the preclearance, but the basic |
| 09:27:43 | 15 | premise of the Voting Rights Act is still there. |
| 09:27:45 | 16 | MR. CONSOVOY:  Section 2 is there. |
| 09:27:47 | 17 | JUDGE HAYNES:  Well, that's an important thing.  So |
| 09:27:48 | 18 | however we get there to solving the problem, are we creating it |
| 09:27:52 | 19 | by your methodology? |
| 09:27:54 | 20 | MR. CONSOVOY:  I don't think so.  I think, again, |
| 09:27:57 | 21 | there's been no appellate challenge to this map.  The section 5 |
| 09:28:01 | 22 | issue, which was the only basis on which the lines were redrawn |
| 09:28:04 | 23 | by the court, is no longer an issue.  So if Texas goes back to |
| 09:28:08 | 24 | the drawing board and does what we believe it's |
| 09:28:11 | 25 | constitutionally obligated to do, yes, of course someone may |

09:28:13  1    challenge that map in court.  We can't -- we can't stop that

09:28:16  2    any more than we would in any other case.

09:28:17  3          In *Reynolds v. Sims*, when Alabama went back to draw

09:28:21  4    its map, conceivably, there may have been some challenge to it.

09:28:24  5    But I don't think the fact that a map can be -- a new map can

09:28:27  6    be subject to subsequent challenge is a basis for denying the

09:28:30  7    rights of people who have been injured.

09:28:31  8          JUDGE HAYNES:  Okay.  So if you're sitting there next

09:28:34  9    year in the well of the legislature and we've ruled that

09:28:37  10   they're supposed to consider, we've given you everything you've

09:28:41  11   asked for, what are they supposed to be doing?  Physically what

09:28:43  12   are they supposed to be doing?

09:28:45  13         MR. CONSOVOY:  So the same number -- we use numbers

09:28:48  14   that the Texas Legislature itself created.  The numbers here

09:28:51  15   are not of our creation.  And it's curious that the State wants

09:28:54  16   to find concern with numbers that the State itself creates

09:28:57  17   because it needs to use those numbers.  The task we're asking

09:29:02  18   the legislature to engage in here is a task that is routinely

09:29:04  19   done in --

09:29:04  20         JUDGE HAYNES:  That's terrific.  Physically, what are

09:29:07  21   they doing?

09:29:08  22         MR. CONSOVOY:  Well, they're going to need to look

09:29:09  23   at -- to equalize voter population.  That's the principal

09:29:12  24   objective.  And then they have a broad range of discretion.

09:29:16  25   The Supreme Court has said anything inside 10 percent is, you

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

09:29:19  1   know, prima facie reasonable.  It can be subject to challenge

09:29:23  2   if it's arbitrary.

09:29:23  3        But if Texas said, We want to increase a little bit

09:29:26  4   of the discrepancy on voter population to accommodate the total

09:29:29  5   population, to accommodate to communities of interest, they can

09:29:32  6   do that.  And then that will be subject to, you know, review

09:29:35  7   later to see whether they did -- they did their job right.  But

09:29:39  8   that's what *Reynolds v. Sims* requires.  That's the point of the

09:29:42  9   case, is to make sure that voters are protected first, but to

09:29:46 10   give the states discretion to take account of other interests

09:29:48 11   as well.  And that's a legislative task.

09:29:50 12        JUDGE YEAKEL:  So what is our order supposed to read?

09:29:53 13   In this case we say we want you to look at what you suggest.

09:29:58 14   Then we get the next case where somebody says there's a

09:30:02 15   different population.  Are you asking us to prepare a checklist

09:30:06 16   for the legislature, and then they have to make sure they set

09:30:11 17   aside an hour or a half a day or a day to take up that topic

09:30:15 18   when they're dealing with redistricting?

09:30:16 19        MR. CONSOVOY:  No, Your Honor.  We're not asking for

09:30:18 20   a checklist at all.  We think *Reynolds v. Sims* establishes the

09:30:21 21   constitutional rule.  And the constitutional rule is that

09:30:24 22   voters are entitled to an equally weighted vote, and the

09:30:27 23   districts must be drawn to protect that right.  Now, all we're

09:30:30 24   saying is that Texas needs to go back and fulfill that duty.

09:30:34 25        In the course of fulfilling that duty, a legislature,

09:30:36    1   as it already does, will look at other things it wants to

09:30:39    2   accommodate as well.  And all we're saying is that's okay, too.

09:30:42    3          JUDGE YEAKEL:  To what extent are minors and

09:30:45    4   incarcerated felons and illegal aliens entitled to

09:30:50    5   representation?

09:30:52    6          MR. CONSOVOY:  We do not believe that *Reynolds v.*

09:30:55    7   *Sims* protects -- protects any independent right to

09:30:59    8   representation.  *Burns* we think -- if that were true, *Burns*

09:31:01    9   would have to be wrong, because people who are -- you know,

09:31:05   10   there was military people -- you know, they were -- they were

09:31:08   11   in Hawaii, military people.  If there was a right to

09:31:13   12   representation, it was deprived by Hawaii, and the Supreme

09:31:16   13   Court found there was no problem with excluding them from the

09:31:18   14   base.  So we think *Burns* -- *and* this is what -- *Chen* says that

09:31:20   15   as well.  That's the reasoning of the *Garza* majority opinion.

09:31:23   16          JUDGE YEAKEL:  So tell me -- answer my question.

09:31:25   17   Tell me when, if you're a nonvoter, you are entitled to

09:31:30   18   representation ever.

09:31:34   19          MR. CONSOVOY:  Within the meaning of the

09:31:35   20   Fourth Amendment, we do not believe they are.

09:31:37   21          JUDGE YEAKEL:  All right.

09:31:38   22          MR. CONSOVOY:  That is a political right, but not a

09:31:40   23   constitutional right.  It's not a constitutional enforceable

09:31:44   24   right.

09:31:45   25          JUDGE YEAKEL:  So we put the million people in the

```
09:31:47   1    district that you mentioned.  At what point is the tipping
09:31:52   2    point reached?
09:31:53   3              MR. CONSOVOY:  We think the framework that's already
09:31:56   4    been established by the Supreme Court applies.  We're not
09:31:59   5    looking to see -- I think this is --
09:32:00   6              JUDGE YEAKEL:  We ignore everybody but registered
09:32:03   7    voters?
09:32:03   8              MR. CONSOVOY:  Not ignore.  The first step would be
09:32:07   9    to make sure that you satisfy the one-person, one-vote
09:32:10  10    obligation.  We're not asking to expand that.
09:32:14  11              JUDGE YEAKEL:  Who is the one person that gets that
09:32:17  12    one vote?
09:32:17  13              MR. CONSOVOY:  The eligible voter.
09:32:19  14              JUDGE YEAKEL:  All right.  So we look first to
09:32:20  15    eligible voters.  That's the primary focus of the court, is
09:32:23  16    people who have bothered to go register.
09:32:27  17              MR. CONSOVOY:  Yes.  No.  They're eligible.  So not
09:32:30  18    registered.
09:32:30  19              JUDGE YEAKEL:  Okay.  Eligible.
09:32:30  20              JUDGE HAYNES:  Well, they're not eligible to vote if
09:32:32  21    they're not registered.
09:32:34  22              MR. CONSOVOY:  I'm sorry, Your Honor?
09:32:34  23              JUDGE HAYNES:  They are not eligible to vote if
09:32:34  24    they're not registered.  At least in Texas you have to register
09:32:36  25    30 days in advance.  So 29 days before the election or actually
```

| | | |
|---|---|---|
| 09:32:40 | 1 | on the day of the election, Joe Blow over here who was born in |
| 09:32:43 | 2 | America and is over 18 and is not a felon nonetheless can't |
| 09:32:47 | 3 | vote if he didn't register. |
| 09:32:48 | 4 | MR. CONSOVOY:  True.  But he has the right to |
| 09:32:51 | 5 | register.  So he falls within the broader class we're talking |
| 09:32:53 | 6 | about here. |
| 09:32:54 | 7 | JUDGE HAYNES:  Okay.  So right to register. |
| 09:32:55 | 8 | MR. CONSOVOY:  Sure.  Right.  Of age, has not had |
| 09:32:59 | 9 | their right to vote taken away from them, meets all other |
| 09:33:02 | 10 | criteria for what would be a, you know, citizen voting age |
| 09:33:05 | 11 | population, which is the established -- you know, one of the |
| 09:33:07 | 12 | metrics that they could utilize here. |
| 09:33:08 | 13 | And so I think it's important for us to just make |
| 09:33:11 | 14 | sure our argument is clear.  We're not looking to expand the |
| 09:33:13 | 15 | law here.  We're not looking to change the law here.  There's |
| 09:33:16 | 16 | an open question.  Justice Thomas acknowledges an open |
| 09:33:19 | 17 | question.  Judge Kozinski acknowledges it's an open question. |
| 09:33:22 | 18 | Judge Garwood when he reached his decision in *Chen* agreed that |
| 09:33:25 | 19 | it was an open question, which is when one-person, one-vote |
| 09:33:29 | 20 | talks about equalizing population, is it talking about total |
| 09:33:32 | 21 | population or voter population? |
| 09:33:34 | 22 | JUDGE HAYNES:  But 200-plus years into our country |
| 09:33:37 | 23 | and, you know, over 100 years since the passage of Fourteenth |
| 09:33:41 | 24 | Amendment, if it's an open question, can we really say that the |
| 09:33:45 | 25 | legislature violated the constitution by not doing it your way, |

09:33:48  1  when no one else has been able to figure out that your way is

09:33:52  2  the only way?

09:33:52  3           MR. CONSOVOY:  I think the answer is yes.  The same

09:33:55  4  argument could have been made in *Reynolds v. Sims*.  Until

09:33:58  5  *Reynolds v. Sims*, no Supreme Court case in 150 years had ever

09:34:02  6  interfered with legislative redistricting on any basis.  We

09:34:05  7  could have said there's no constitutionally founded right --

09:34:07  8           JUDGE HAYNES:  If I'm not mistaken, *Reynolds* is about

09:34:10  9  as old as I am.  That's pretty darn old.  So in 50 years we

09:34:13  10  haven't really evolved very much farther.

09:34:16  11          JUDGE YEAKEL:  *Reynolds* is quite young.  Don't tell

09:34:20  12  me it's an old case.

09:34:22  13          MR. CONSOVOY:  I agree, Judge Yeakel.  I think it is

09:34:25  14  interesting that the question has remained open, and I think

09:34:27  15  the reason why is because of changing demographics, honestly.

09:34:31  16  You know, in 1950 total population of voter population,

09:34:34  17  particularly in the states that were at issue in those cases

09:34:37  18  pretty much approximated each other.  There wasn't a real

09:34:40  19  variance there.  Over time these variances have developed.  We

09:34:43  20  saw it in California in 1990.  We saw it in Hawaii.

09:34:48  21          JUDGE HAYNES:  I know.  I mean, I grew up in Florida

09:34:50  22  where we had a very large immigrant Cuban population as a

09:34:54  23  result of the events of the early '50s, early '60s in Cuba.  So

09:34:56  24  that's been 50 years in the making.

09:34:57  25          MR. CONSOVOY:  Yeah.  I'm not familiar with the

```
09:34:59   1    specific facts --
09:35:00   2             JUDGE HAYNES:  So the point is there's plenty of
09:35:02   3    places where people come in -- refugees and immigrants from
09:35:06   4    other countries come in in large waves to particular states and
09:35:09   5    so forth and alter the balance of the population.  This is not
09:35:12   6    new as of 2014.
09:35:15   7             MR. CONSOVOY:  No.  And --
09:35:16   8             JUDGE HAYNES:  And, frankly, the country is sort of
09:35:19   9    founded on immigrants coming here.
09:35:21  10             MR. CONSOVOY:  And we don't disagree with that.  But
09:35:23  11    it's called the one-person, one-vote right.  And the way to
09:35:28  12    think about it is this:  If a nonvoter, a noncitizen, or a
09:35:32  13    felon came into this courtroom and said, I want to bring a
09:35:36  14    one-person, one-vote challenge because I don't have total
09:35:38  15    population in my district, would that person have standing to
09:35:41  16    bring that case?  Baker v. Carr says no.
09:35:44  17             The reason why the court first found that a
09:35:48  18    judicially enforceable right, if the court goes back and looks
09:35:52  19    at that case, Justice Brennan's opinion has an entire section
09:35:55  20    on standing that says they have standing, they are eligible
09:35:58  21    voters in these counties in Tennessee, and that that's what
09:36:01  22    creates the -- a right to bring an action to court.
09:36:04  23             If it truly is a representational interest, then the
09:36:07  24    felon would have a right to challenge the population of their
09:36:10  25    district in this court because they would have injury from
```

09:36:13  1  their representational rights being injured.  And we just don't
09:36:16  2  think that can be reconciled with Supreme Court precedent.  The
09:36:18  3  right is the right held by voters, and that right clearly has
09:36:21  4  been violated here.  We're talking about deviations nearing
09:36:25  5  30 to 50 percent.  The most the Supreme Court has ever accepted
09:36:28  6  of a deviation is 16.4.
09:36:30  7           JUDGE YEAKEL:  Where do we stop that inquiry?  At
09:36:33  8  what group -- how many groups do we look at -- population
09:36:37  9  groups to see where there's deviation?
09:36:39  10          MR. CONSOVOY:  Well, as far as *Reynolds v. Sims* goes,
09:36:42  11  we think Texas could just do voter population.  Our point is,
09:36:47  12  is that they don't have to stop there.  So I don't think we're
09:36:50  13  putting Texas in a difficult spot, where we are forcing, you
09:36:54  14  know, multiple inquiries upon Texas.  The point is that
09:36:57  15  *Reynolds v. Sims* says protect voters.
09:37:01  16          But that's why the court created this latitude, this
09:37:03  17  10 percent deviation latitude, because they understood that
09:37:06  18  Texas or any other state might have an important policy
09:37:09  19  interest in protecting other -- accommodating other values.
09:37:12  20  And one of those might be total population, which would help
09:37:15  21  protect the rights of immigrants and nonvoters.  But you can't
09:37:19  22  use a policy consideration to overcome a constitutional
09:37:23  23  interest, and that essentially is what Texas's argument is
09:37:26  24  here.  I go back to my --
09:37:27  25          JUDGE HAYNES:  Now let me ask you this:  Do you have

| | | |
|---|---|---|
| 09:37:29 | 1 | an injury-in-fact if despite the number of CVAP and so on and |
| 09:37:34 | 2 | so forth, the reality is, because no one votes in your |
| 09:37:36 | 3 | district, that your vote actually counts more?  I mean, there's |
| 09:37:40 | 4 | places where -- where elections are decided by two or three |
| 09:37:44 | 5 | votes and there's places where it's thousands and thousands. |
| 09:37:47 | 6 | And so people vote in rather odd patterns sometimes and, |
| 09:37:51 | 7 | frankly, very few people really do vote, particularly in these, |
| 09:37:55 | 8 | sort of, off-year elections and so on. |
| 09:37:58 | 9 | So does that make a difference to your injury-in-fact |
| 09:38:00 | 10 | if, in fact, you're in a district where, because no one else |
| 09:38:03 | 11 | votes, your vote actually counts more than over here where |
| 09:38:06 | 12 | there's a bunch of people who go around voting? |
| 09:38:08 | 13 | MR. CONSOVOY:  The Supreme Court has never held that. |
| 09:38:10 | 14 | JUDGE HAYNES:  Well, they've never held your way |
| 09:38:12 | 15 | either.  We're in this brave new world that you're creating. |
| 09:38:15 | 16 | I'm just exploring it. |
| 09:38:16 | 17 | MR. CONSOVOY:  Sure.  The Supreme Court has said that |
| 09:38:17 | 18 | you don't judge election-related rights by whether your vote |
| 09:38:21 | 19 | impacted the outcome. |
| 09:38:22 | 20 | JUDGE HAYNES:  No.  I'm not talking about the right. |
| 09:38:24 | 21 | I'm talking about injury-in-fact.  Has your client been injured |
| 09:38:26 | 22 | in fact if the truth is that, because of the way people vote, |
| 09:38:30 | 23 | this person's vote is actually being counted more heavily |
| 09:38:35 | 24 | because no one else is voting? |
| 09:38:36 | 25 | MR. CONSOVOY:  And the answer is they have been |

| | | |
|---|---|---|
| 09:38:38 | 1 | injured in fact because the right here is a right to |
| 09:38:40 | 2 | populations that make sure that the votes are equally weighted. |
| 09:38:44 | 3 | The court has never, and the standing inquiry wouldn't allow |
| 09:38:47 | 4 | you to look at outcome to determine whether at the outset the |
| 09:38:51 | 5 | injury would exist. |
| 09:38:52 | 6 | You would have to -- let's say no elections had been |
| 09:38:56 | 7 | held on these districts.  You would have to wait until the end |
| 09:38:58 | 8 | of election, see who was impacted, and then reverse engineer |
| 09:39:01 | 9 | back.  That's just not how standing is done.  Standing is done |
| 09:39:05 | 10 | at the outset.  And rightly so.  You could imagine the series |
| 09:39:07 | 11 | of ballot access issues which have come up in this Circuit, |
| 09:39:11 | 12 | certainly, over the course of time. |
| 09:39:12 | 13 | And imagine someone saying, Well, it doesn't matter |
| 09:39:14 | 14 | if you were denied your right to vote because the vote wasn't |
| 09:39:18 | 15 | within one vote, and so your vote wouldn't have mattered.  You |
| 09:39:20 | 16 | have no standing.  That's just not how the inquiry is done. |
| 09:39:22 | 17 | Nor should it be. |
| 09:39:23 | 18 | JUDGE YEAKEL:  Your argument is that the court should |
| 09:39:26 | 19 | compel the legislature to look at certain factors as opposed to |
| 09:39:30 | 20 | just looking at a plan that is passed by the legislature and |
| 09:39:34 | 21 | determining if it reasonably accounts for voters; is that |
| 09:39:38 | 22 | right? |
| 09:39:39 | 23 | MR. CONSOVOY:  Under the circumstances here, yes.  It |
| 09:39:42 | 24 | wouldn't always be the case.  And I understand Your Honor's |
| 09:39:45 | 25 | question about are we looking at plans or are we looking at |

09:39:48  1  rules.  And we agree that you're looking at plans.  And what
09:39:51  2  we're actually doing is asking to give Texas a second chance.
09:39:54  3       JUDGE YEAKEL:  But you're saying we should scratch
09:39:56  4  beneath the surface of the plan and see what was considered
09:39:59  5  other than just looking at the plan and seeing -- judging its
09:40:05  6  overall reasonableness and whether it takes into account the
09:40:09  7  rights of the people in the area?
09:40:10  8       MR. CONSOVOY:  I think we're taking a slightly
09:40:12  9  different position than that.  I think court could -- and I
09:40:15  10  think our position is actually providing more deference to the
09:40:18  11  state.  Let me see if I can try to explain why.
09:40:20  12       We want the court to look at the plan, and there's no
09:40:23  13  question the plan fails to protect the voters.  So that's the
09:40:27  14  holding.  The question, then, is remedy.  And Your Honor is
09:40:30  15  right.  The court could conceivably just --
09:40:33  16       JUDGE YEAKEL:  I'm not sure Ms. Kane agrees with you,
09:40:35  17  that the plan fails to protect voters, but I'm sure she will
09:40:40  18  tell us about that in her remaining time.
09:40:42  19       MR. CONSOVOY:  Well, if voter equality matters, I
09:40:44  20  find it hard to believe that the State could defend deviations
09:40:47  21  of 30 to 40 percent.  But I agree the State has the right to
09:40:50  22  try to do that.
09:40:51  23       JUDGE YEAKEL:  Well, why do we stop at eligible
09:40:53  24  voting population?  Why don't we get to the City of Austin,
09:40:58  25  where under 11 percent of the population votes in city

09:41:01  1   elections, and saying, Well, this is just horrible, that

09:41:04  2   there's less than 11 percent of the population deciding what my

09:41:09  3   tax base is going to be and how we're going to spend our money?

09:41:13  4   Why don't we eventually, with your argument, get down to those

09:41:17  5   deeper levels.

09:41:18  6           MR. CONSOVOY:  Because of *Reynolds v. Sims and the*

09:41:20  7   *holding* that it creates, which is that, again -- or *Baker*,

09:41:23  8   really, which is who has standing to bring the claim?  The

09:41:26  9   person who has standing to bring the claim is the person who

09:41:29  10  was entitled to vote.  They may not exercise that right, but

09:41:32  11  what *Baker* and *Reynolds* say is, whether they exercise that

09:41:35  12  right or not, you have to look at it from the outset, when the

09:41:38  13  plan is created.  And the court doesn't know who is going to

09:41:41  14  vote when a plan is created.  There's no way to know.  And so

09:41:44  15  you create districts make sure that somebody's vote isn't

09:41:47  16  weighted doubly at the outset of the creation of the plan

09:41:51  17  versus somebody else.  That's the fundamental.  The court's not

09:41:54  18  engaging in trying to ensure by percentage of actual

09:41:57  19  participation.  That's just not the way *Reynolds v. Sims* works.

09:42:01  20          JUDGE HAYNES:  Okay.  Let me go to the other end.  So

09:42:05  21  we've been talking about, What if you win?  All right.  What if

09:42:07  22  you lose so badly that we think this just wasn't even a claim

09:42:10  23  of any substance.  I know you don't want to concede that, but

09:42:13  24  let's just hypothetically say we conclude that.  I want to get

09:42:15  25  into this issue of the procedure.

| | | |
|---|---|---|
| 09:42:16 | 1 | If we as a three-judge panel conclude this case was |
| 09:42:19 | 2 | so insubstantial it didn't even need to be a three-judge panel, |
| 09:42:23 | 3 | what is the procedure then?  You don't have to concede that |
| 09:42:27 | 4 | that would be the case at all.  But if that happened, what |
| 09:42:29 | 5 | would be the procedure? |
| 09:42:31 | 6 | MR. CONSOVOY:  I confess I don't quite know |
| 09:42:33 | 7 | procedurally how it would work.  I would say that as the Second |
| 09:42:35 | 8 | Circuit opinion, *Kalson*, highlights, it is a somewhat |
| 09:42:40 | 9 | interesting and unresolved question whether it can be resolved |
| 09:42:43 | 10 | as insubstantial based on the merit of the case.  It's been |
| 09:42:45 | 11 | done, and we don't dispute it has been done.  But I think it |
| 09:42:48 | 12 | would probably be incumbent on the court to explain in that |
| 09:42:53 | 13 | opinion why when 2024 says a three-judge panel shall be |
| 09:42:57 | 14 | instituted with respect to merits of the claim. |
| 09:42:59 | 15 | You know, if the person lacks standing or they failed |
| 09:43:01 | 16 | to pay their filing fee or something that looks obviously |
| 09:43:07 | 17 | deficient from the face of the complaint, I think there is |
| 09:43:09 | 18 | reasonable room to say you can dismiss the claim as |
| 09:43:09 | 19 | insubstantial.  Whether you just simply don't like the claim |
| 09:43:12 | 20 | for 12(b)(6) reasons, I think it's an open question, and, you |
| 09:43:15 | 21 | know, I think the court would need to grapple with that. |
| 09:43:21 | 22 | And I personally think -- we haven't briefed this, |
| 09:43:23 | 23 | but I do think there is a question about how the statute could |
| 09:43:24 | 24 | be interpreted to resolve it on the merits on insubstantial |
| 09:43:27 | 25 | grounds.  But I don't think the court needs to reach these |

09:43:30  1  questions.  Judge Kozinski wrote a lengthy dissent.  Judge

09:43:30  2  Garwood said this is a close question in *Chen*.  Justice Thomas

09:43:34  3  wrote a dissent in the denial of cert. saying it's an important

09:43:35  4  unopened question that the court needs to resolve.  The idea

09:43:38  5  that that question is so insubstantial as to be facially

09:43:43  6  deficient I think is just a hard argument to make.

09:43:46  7          JUDGE HAYNES:  So you -- so you are saying you could

09:43:49  8  lose on 12(b)(6), but it wasn't an insubstantial claim?

09:43:53  9          MR. CONSOVOY:  Sure.

09:43:54 10          JUDGE HAYNES:  You think there is a -- a difference

09:43:56 11  between wholly insubstantial and a 12(b)(6) loser?

09:44:00 12          MR. CONSOVOY:  Yeah.  Different worlds completely.

09:44:02 13  Insubstantial is basically frivolous.  That, I think, is what

09:44:08 14  it boils down to.  I think the Second Circuit pushed the limits

09:44:11 15  of that.  If you think you can do it on the merits at all, then

09:44:14 16  it would have to be, you know -- Judge Calabresi said

09:44:17 17  basically, you know, borderline frivolous.

09:44:20 18          And I think whatever the court thinks of the merits

09:44:22 19  of our claims, I don't think the court should consider them to

09:44:24 20  be a frivolous argument.  I think this is a very serious issue.

09:44:27 21          JUDGE YEAKEL:  How about borderline frivolous?

09:44:29 22          MR. CONSOVOY:  Not even borderline.

09:44:31 23          JUDGE YEAKEL:  Is this not an issue that could only

09:44:33 24  have been raised after we developed computers of such a

09:44:40 25  sophistication that they can look at all of these little

| | | |
|---|---|---|
| 09:44:43 | 1 | factors, such as who's registered and who's not registered? |
| 09:44:45 | 2 | MR. CONSOVOY:  I think it's been made easier.  I |
| 09:44:47 | 3 | think there's no way -- I agree with that.  So easy now that |
| 09:44:50 | 4 | Texas generated these statistics on its own without any |
| 09:44:55 | 5 | complaint or dispute about the difficulty in doing so. |
| 09:44:58 | 6 | And, you know, in *Reynolds* the court said -- and I |
| 09:45:00 | 7 | think this is an important point.  It helps to explain why it's |
| 09:45:04 | 8 | been so slow for this issue to come around.  It said the court |
| 09:45:06 | 9 | was establishing a basic constitutional rule.  And it said, |
| 09:45:09 | 10 | When the Supreme Court creates, you know, undiscovered, you |
| 09:45:12 | 11 | know, rights like that, a common-law approach, a case-by-case |
| 09:45:16 | 12 | approach, is the right way to resolve these things.  And so |
| 09:45:18 | 13 | over time different factors are going -- are going to weigh |
| 09:45:22 | 14 | differently, and it's going to matter differently in different |
| 09:45:25 | 15 | jurisdictions.  And I don't think that's unusual or any reason |
| 09:45:28 | 16 | to hesitate.  This data is easily available now.  It's used in |
| 09:45:32 | 17 | section 2 cases every day. |
| 09:45:32 | 18 | JUDGE HAYNES:  I'm going to challenge all |
| 09:45:34 | 19 | assumptions.  That's one of my mottos.  And so I understand the |
| 09:45:36 | 20 | State generated a bunch of statistics.  I'm not sure that makes |
| 09:45:42 | 21 | them accurate.  And one of the problems of this citizens of |
| 09:45:44 | 22 | voting age population is a fairly fluid concept in a place like |
| 09:45:48 | 23 | Texas because, for example, when we had Hurricane Katrina, we |
| 09:45:52 | 24 | had a large influx of evacuees from New Orleans.  Those are |
| 09:45:56 | 25 | voting age people.  They are citizens of the United States. |

```
09:45:59   1          If they stay beyond the immediate threat of Katrina
09:46:05   2   because there's no home to go back to, then they become
09:46:08   3   citizens of Texas fairly easily.  They can reside there 30 days
09:46:12   4   and intend to stay, and they become citizens.  But that's all
09:46:15   5   of a sudden really altered the landscape of a major
09:46:19   6   metropolitan area like Dallas or I'm sure -- I don't know much
09:46:22   7   about Austin -- Dallas, Houston, et cetera.
09:46:25   8          As well you have people who are -- you know, my
09:46:27   9   parents are naturalized citizens.  Well, there was a day they
09:46:30  10   weren't citizens, and then there was a day they were, the very
09:46:33  11   next day.  But they're not in your number because your number
09:46:37  12   necessarily is at some other time.  As well we have a lot of
09:46:40  13   people who are in and out and whatever from this or that, and
09:46:43  14   maybe immigration law has changed and somebody who was not
09:46:46  15   lawfully here becomes lawfully here or gets on a path to
09:46:49  16   citizenship.
09:46:50  17          And so when you're doing redistricting every 10
09:46:53  18   years, you're not able to account for that, as well as you're
09:46:56  19   maybe not finding those citizens of voting age population.  You
09:47:00  20   just generated a number that made the computer happy.  So
09:47:03  21   address that.  I know that was a long question.
09:47:05  22          MR. CONSOVOY:  Let me see if I can give you a
09:47:06  23   four-part answer to that question, if I might.
09:47:08  24          JUDGE HAYNES:  All right.
09:47:08  25          MR. CONSOVOY:  Number one, the same critique could be
```

09:47:10  1    made of the census, and it often is.  People move in and out of

09:47:15  2    jurisdictions.  If you look at states like Pennsylvania and

09:47:16  3    North Carolina, for instance, over a 10-year period, massive

09:47:19  4    total population shifts.  The Supreme Court has said we're not

09:47:20  5    going to let the perfect be the enemy of good.  And the good

09:47:22  6    here in our case is voter equality.  But the same critique

09:47:26  7    could be made of the census -- inaccurate, it doesn't account

09:47:29  8    for the shifting population.  So I don't think those kind of

09:47:31  9    critiques, when the state is relying on one that has its own

09:47:35 10    flaws, it really has much to offer.

09:47:37 11            Second, we're at the motion to dismiss stage here.

09:47:40 12    So the court needs to accept as true that the numbers we offer

09:47:44 13    exist and that they are accurate and that they are feasible.

09:47:48 14    And then at summary judgment the State can potentially try to

09:47:52 15    offer critiques, but we actually think that would fail, too,

09:47:55 16    because this is a job for the legislature to figure out.  You

09:47:58 17    know, in equal protection cases, litigants don't get to create

09:48:02 18    rationales for legislatures.  Legislatures have to do this work

09:48:04 19    itself, and then it's reviewed accordingly.

09:48:07 20            And so I guess those are really the two main ones I

09:48:10 21    would -- I would, you know --

09:48:12 22            JUDGE HAYNES:  Since you touched on the summary

09:48:13 23    judgment, I know you had a scheduling conference with

09:48:16 24    Judge Yeakel.  And, necessarily, of course, that needs to be

09:48:22 25    handled by one judge, so I wasn't privy to it.  But I'm

09:48:25  1  wondering, like, what's next?  So if we just deny the motion to
09:48:27  2  dismiss, what's this going to look like practically speaking?
09:48:34  3  What discovery do you need or are you going to do?  What's
09:48:35  4  going to happen?  What are we -- what next convocation of the
09:48:39  5  three of us might we expect, et cetera?
09:48:41  6       MR. CONSOVOY:  Right.  So the short answer is, in our
09:48:43  7  view, very, very little.  If the court were to deny this motion
09:48:46  8  to dismiss, it will have found that we're correct about the
09:48:49  9  nature of the right and that the 10 percent paradigm that
09:48:53 10  Supreme Court has created for the protection of that right
09:48:56 11  exists here.
09:48:56 12       The only question left then is, can Texas survive
09:48:59 13  summary judgment within that system of review which says,
09:49:02 14  outside 10 percent, they have the burden of bearing an
09:49:06 15  appropriate justification for going there above a certain
09:49:08 16  threshold, as Judge Schneider pointed out, it becomes
09:49:13 17  constitutionally intolerable.  They have the obligation then to
09:49:15 18  say, Okay.  We have -- well, they can try to dispute the
09:49:17 19  numbers.  I don't think they will.  They're their numbers.  So
09:49:20 20  I don't think there will be any discovery about the numbers
09:49:23 21  that were created here.
09:49:24 22       So then the question is, can Texas defend those
09:49:26 23  numbers?  We say there's no material issue in dispute.  There's
09:49:30 24  no triable issue.  Why can't Texas defend these deviations?
09:49:33 25  One, deviations this large have never been accepted by the

09:49:36  1    Supreme Court.  The Supreme Court said 16.4 is about as high as
09:49:39  2    we're willing to go.
09:49:40  3              JUDGE YEAKEL:  But has the Supreme Court ever
09:49:42  4    examined that in this context?
09:49:44  5              MR. CONSOVOY:  Well, yes and no.  So, no, the Supreme
09:49:47  6    Court has not decided the underlying question, which is:  What
09:49:51  7    is the nature of the population protected by *Reynolds v. Sims*?
09:49:55  8    But once the underlying question is resolved, the rest of it
09:49:57  9    follows directly like dominos right from that.  Again, we're
09:50:01  10   not trying to create new rights.  There's an open question
09:50:04  11   about the nature of the original right.  And once that question
09:50:06  12   is resolved, the framework for evaluating that right has
09:50:08  13   already been set in place.
09:50:10  14             JUDGE YEAKEL:  So you ask us to construe *Reynolds v.*
09:50:14  15   *Sims* and *Baker v. Carr* to say that we go first to the number of
09:50:17  16   people who would be eligible to vote in a district, and the
09:50:21  17   basis starts there?
09:50:22  18             MR. CONSOVOY:  That is absolutely correct, yes.  And
09:50:24  19   I think *Reynolds*, you know, it speaks for itself.  It says --
09:50:30  20             JUDGE YEAKEL:  Well, all Supreme Court cases speak
09:50:33  21   for themselves, but they speak in different voices.
09:50:35  22             MR. CONSOVOY:  I understand that.
09:50:36  23             JUDGE HAYNES:  But what the heck do they say?
09:50:38  24             JUDGE YEAKEL:  Yeah.
09:50:38  25             MR. CONSOVOY:  We think we've highlighted the key

09:50:42  1  passages that explain what the court's thinking was in those

09:50:44  2  cases.  When it said, simply stated, you cannot have one voter

09:50:47  3  who has a greater weighted vote than another voter.  If that

09:50:52  4  sentence has a meaning, this plan is unconstitutional.

09:50:54  5          Unless the Court has any further questions?

09:50:56  6          JUDGE YEAKEL:  Thank you, Mr. Consovoy.

09:50:59  7          Ms. Kane, you've got about eight minutes to wrap up

09:51:01  8  here.

09:51:01  9          MS. KANE:  Thank you, Your Honor.  I think it's

09:51:03  10 telling that the plaintiffs in all of their arguments fail to

09:51:07  11 address the language from *Burns v. Richardson* which, of course,

09:51:10  12 followed *Reynolds v. Sims*.  And we would point out that, in

09:51:13  13 order for them to be right, the Supreme Court is going to have

09:51:15  14 to overturn *Burns* because, in *Burns*, the court specifically

09:51:17  15 said, neither -- and again this was in the context of looking

09:51:22  16 at apportionment in which voter -- registered voters were the

09:51:27  17 base.  Nevertheless, what the court said was:  Neither in

09:51:29  18 *Reynolds* nor in any other decision has the Supreme Court

09:51:33  19 suggested that the states are required to include aliens,

09:51:35  20 transients, short-term, or temporary residents, or persons

09:51:39  21 denied the vote.

09:51:40  22          So there's a recognition there that, yes, you don't

09:51:42  23 have to include them.  However, the court then went on to say:

09:51:44  24 The State's decision to include or exclude any such group

09:51:47  25 involves choices about the nature of representation which we

| | | |
|---|---|---|
| 09:51:50 | 1 | have found -- or excuse me -- which we have been shown no |
| 09:51:54 | 2 | constitutionally founded reason to interfere. |
| 09:51:56 | 3 | So this is a post-*Reynolds* decision in which the |
| 09:51:59 | 4 | court is expressly recognizing why those populations don't |
| 09:52:01 | 5 | necessarily have to be included.  The decision to include them, |
| 09:52:05 | 6 | such as use of total population might include those |
| 09:52:09 | 7 | populations, is one for which they have, quote, no |
| 09:52:11 | 8 | constitutionally founded reason to interfere. |
| 09:52:14 | 9 | The plaintiffs fail to squarely address that because |
| 09:52:17 | 10 | they simply can't.  Unless and until the Supreme Court decides |
| 09:52:20 | 11 | otherwise, the argument here that the states are required to |
| 09:52:24 | 12 | essentially use data that would exclude all of those |
| 09:52:27 | 13 | populations simply doesn't have any support. |
| 09:52:29 | 14 | JUDGE HAYNES:  Let me ask you this:  If we deny the |
| 09:52:32 | 15 | motion to dismiss, you said that for purposes of the motion to |
| 09:52:35 | 16 | dismiss, you concede that you could consider both and arrive at |
| 09:52:38 | 17 | some magical map.  So if we deny the motion to dismiss and |
| 09:52:42 | 18 | we're done with that sort of presumption and that their facts |
| 09:52:45 | 19 | are correct, what then?  I mean, are you going to challenge |
| 09:52:47 | 20 | that notion that we could harmonize the two -- "we" meaning |
| 09:52:52 | 21 | collectively, sort of, the courts and legislature -- could |
| 09:52:55 | 22 | harmonize total population with CVAP? |
| 09:52:58 | 23 | MS. KANE:  So I think that there is an intermediate |
| 09:53:00 | 24 | question that would affect that, which is what Judge Yeakel |
| 09:53:05 | 25 | touched on.  All of the cases to which the plaintiff referred |

09:53:07  1   in which there was a 10 percent, kind of, threshold under which
09:53:11  2   the states were okay, but then there was some percentage
09:53:16  3   deviation beyond which the courts find justifiable were, again,
09:53:20  4   only in the context where there was one population set of data
09:53:23  5   at issue and not multiple sets of data where perhaps one set
09:53:28  6   was equalized but another set wasn't.
09:53:30  7           So if the court were to say that the plaintiffs have
09:53:34  8   stated a viable claim here, then it would also have to say that
09:53:37  9   the rule that applies when -- that the courts have applied in
09:53:41  10  the context of, frankly, cases that involved either total
09:53:44  11  population or voter population as the apportionment base, that
09:53:48  12  10 percent, slash, greater than 16 percent rule applies to an
09:53:55  13  analysis of either CVAP or voter age population and whatnot.
09:53:59  14          If the court were to decide that, then, of course, if
09:54:05  15  the numbers ultimately -- if we ultimately concede the accuracy
09:54:08  16  of the numbers, then it probably is true that we don't have
09:54:11  17  very far to go at that point.  However, we have an equalized
09:54:15  18  total population that's not in dispute either.
09:54:18  19          So -- so what rule the court decides or what standard
09:54:22  20  by which the court decides to measure compliance with the Equal
09:54:24  21  Protection Clause, if it decides to hold that we have to
09:54:28  22  consider some other data other than total population, we're in
09:54:32  23  a completely new world.  So you would -- the court would have
09:54:35  24  to fashion some standard of enforcement that then the rest of
09:54:39  25  this case would be measured by.

```
09:54:41   1              And that's why we advocated, frankly, for a 12(b)(6)
09:54:45   2    decision prior to moving to summary judgment, because without
09:54:48   3    knowing what that legal standard is in this brave new world
09:54:51   4    that the plaintiffs are asserting, then we don't have any real
09:54:54   5    guidance as to how we should be going about proving up a case
09:54:58   6    or defending a case, frankly, at that point.  Because the rules
09:55:02   7    that exist now have existed in a world where this rule has
09:55:05   8    never been applied that the plaintiffs advocating for.  And I
09:55:09   9    don't know --
09:55:10  10              JUDGE HAYNES:  So there's no rules to govern new
09:55:12  11    rules.
09:55:13  12              MS. KANE:  Frankly.  To the extent there's a two-step
09:55:15  13    process here, once the first step changes, the second step has
09:55:18  14    to be clarified or at least the court has to make clear that
09:55:21  15    the second step that's applied in these other cases is now
09:55:24  16    going to apply with equal force even though the court has
09:55:27  17    changed step one of the analysis essentially by adopting the
09:55:30  18    plaintiff's new rule.
09:55:31  19              Again, there's no -- this is why, again, we believe
09:55:34  20    this case should be dismissed on 12(b)(6) because, again, in
09:55:37  21    Burns the court has found -- heretofore has not found that this
09:55:41  22    is a rule that is constitutionally required that the states
09:55:45  23    most comply with.
09:55:46  24              I will note just briefly on this question of
09:55:49  25    "insubstantiability."  The Kalson case explained this issue by
```

09:55:52  1  saying:  An insubstantial federal claim is not a claim validly

09:55:56  2  brought under federal law.  As a result, it does not create

09:55:59  3  jurisdiction in any federal court, and a single judge is

09:56:01  4  permitted to dismiss such a claim with prejudice.

09:56:04  5         Again, because the *Burns* case, unless and until that

09:56:07  6  language is somehow altered or changed, we believe compels the

09:56:12  7  result of dismissal here.  We believe that if this panel feels

09:56:15  8  necessary to dissolve and have one judge issue the order

09:56:18  9  dismissing, the *Kalson* case seems to indicate that would be

09:56:22  10 permissible, although, again, we do grant that the three-judge

09:56:26  11 panel could also issue an order as well.

09:56:28  12        Unless the court has any further questions, we'll

09:56:33  13 stand on our briefing.  Thank you.

09:56:35  14        JUDGE YEAKEL:  Thank you.  The case is under

09:56:36  15 submission.  The court's in recess.

09:56:40  16     (End of transcript)

          17

          18

          19

          20

          21

          22

          23

          24

          25

1    **UNITED STATES DISTRICT COURT        )**

2    **WESTERN DISTRICT OF TEXAS            )**

3         I, Arlinda Rodriguez, Official Court Reporter, United

4    States District Court, Western District of Texas, do certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7         I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States.

10        WITNESS MY OFFICIAL HAND this the 15th day of

11   September 2014.

12

13                                    /S/ Arlinda Rodriguez
                                      Arlinda Rodriguez, Texas CSR 7753
14                                    Expiration Date:  12/31/2014
                                      Official Court Reporter
15                                    United States District Court
                                      Austin Division
16                                    501 West 5th Street, Suite 4152
                                      Austin, Texas 78701
17                                    (512) 391-8791

18

19

20

21

22

23

24

25