FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2014 NOV 5  AM 9:50

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

| | | |
|---|---|---|
| SUE EVENWEL AND | § | |
| EDWARD PFENNINGER | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. A-14-CV-335-LY-CH-MHS |
| | § | |
| | § | |
| RICK PERRY, IN HIS OFFICIAL | § | |
| CAPACITY AS GOVERNOR OF | § | |
| TEXAS, AND NANDITA BERRY, | § | |
| IN HER OFFICIAL CAPACITY AS | § | |
| TEXAS SECRETARY OF STATE, | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

After this case was filed raising allegations implicating a statewide redistricting scheme, Fifth Circuit Chief Judge Carl Stewart appointed this three-judge panel to preside over the case. 28 U.S.C. § 2284. This court has federal-question jurisdiction. 28 U.S.C. §§ 1331, 1343(a)(3)–(4); 42 U.S.C. § 1983. Before the court are the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Clerk's Doc. No. 15). The court heard oral argument on the motion on June 25, 2014. Also pending are Plaintiffs' motion for summary judgment (Clerk's Doc. No. 12) and a motion to intervene filed by the Texas Senate Hispanic Caucus, and others (Clerk's Doc. No. 25). For the following reasons, we GRANT Defendants' Motion to Dismiss. Accordingly, we DISMISS Plaintiffs' motion for summary judgment and the motion to intervene.

# I. Background

The Texas Legislature is required by the Texas Constitution to reapportion its senate districts during the first regular session after the federal decennial census. Tex. Const. art. III, § 28. It is undisputed that, after publication of the 2010 census, the Texas Legislature created redistricting PLANS148[1] and passed it as part of Senate Bill 31, which Texas Governor Rick Perry signed into law June 17, 2011. *See* Act of May 21, 2011, 82nd Leg., R.S.,ch.1315, 2011 Tex. Sess. Law Serv. 3748. A separate three-judge panel of the United States District Court for the Western District of Texas found that there was a not insubstantial claim that PLANS148 violated the federal Voting Rights Act, and issued an interim plan, PLANS172, for the 2012 primary elections. *See Davis v. Perry*, Nos. 5:11-CV-788, 5:11-CV-855, 2014 WL 106990, at *3 (W.D. Tex. Jan. 8, 2014). Thereafter, the Texas Legislature adopted and Governor Perry signed into law PLANS172, as the official Texas Senate districting plan. *See* Act of June 21, 2013, 83rd Leg., 1st C.S. ch.1, 2013 Tex. Sess. Law Serv. 4677.

On April 21, 2014, Plaintiffs Sue Evenwel and Edward Pfenninger filed this suit against Governor Perry and Texas Secretary of State Nandita Berry in their official capacities. Plaintiffs allege that they are registered voters who actively vote in Texas Senate elections. Evenwel lives in Titus County, part of Texas Senate District 1, and Pfenninger lives in Montgomery County, part of Texas Senate District 4.

Plaintiffs allege that, in enacting PLANS172, the Texas Legislature apportioned senatorial districts to achieve a relatively equal number of

---

1. The Legislature identifies the redistricting plans referred to in this opinion as the plans are identified "on the redistricting computer system operated by the Texas Legislative Council." This court will do the same. *See* Act of May 21, 2011, 82nd Leg., R.S.,ch.1315, 2011 Tex. Sess. Law Serv. 3748 ("PLANS148"); Act of June 21, 2013, 83rd Leg., 1st C.S. ch.1, 2013 Tex. Sess. Law Serv. 4677("PLANS172").

individuals based on total population alone. Plaintiffs concede that PLANS172's total deviation from ideal, using total population, is 8.04%. The crux of the dispute is Plaintiffs' allegation that the districts vary widely in population when measured using various voter-population metrics.[2] They further allege that it is possible to create districts that contain both relatively equal numbers of voter population and relatively equal numbers of total population. They conclude that PLANS172 violates the one-person, one-vote principle of the Equal Protection Clause by not apportioning districts to equalize *both* total population and voter population. *See* 42 U.S.C. § 1983.

Defendants' motion to dismiss argues that there is no legal basis for Plaintiffs' claim that PLANS172 is unconstitutional for not apportioning districts pursuant to Plaintiffs' proffered scheme.

## II. Standard of Review

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The inquiry under Rule 12(b)(6) is whether, accepting all facts alleged in the complaint as true, the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Importantly, legal conclusions need not be accepted as true. *Id.* Under Rule 12(b)(6), dismissal is proper if a claim is based on an ultimately unavailing legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

## III. Discussion

A state's congressional-apportionment plan may be challenged under the Equal Protection Clause in either of two ways: (1) that the plan does not achieve substantial equality of population among districts when measured

---

2. Plaintiffs use the following metrics: citizen voting age population ("CVAP") from 2005–2009, 2006–2010, and 2007–2011; total voter registration from 2008 and 2010; and non-suspense voter registration from 2008 and 2010.

using a permissible population base, *see Gaffney v. Cummings*, 412 U.S. 735, 744 (1973); or (2) that the plan is created in a manner that is otherwise invidiously discriminatory against a protected group, *see id.* at 751–52. Plaintiffs' challenge falls only in the first category, so we address that theory.[3]

Here Plaintiffs must prove that the districting plan violates the Equal Protection Clause by demonstrating that the plan fails to achieve "substantial equality of population"—what Plaintiffs refer to as the "one-person, one-vote" principle. *Reynolds v. Sims*, 377 U.S. 533, 579 (1964) ("[T]he overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State."); *id.* at 577 ("[T]he Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable."); *see also Brown v. Thomson*, 462 U.S. 835, 842 (1983); *Gaffney*, 412 U.S. at 744. Under this approach, absolute mathematical equality is not necessary, as some deviation is permissible in order to achieve other legitimate state interests. *See Brown*, 462 U.S. at 842; *Reynolds*, 377 U.S. at 577–79. Furthermore, minor deviations, defined as "a maximum population deviation under 10%," fail to make out a prima facie case under this theory. *Brown*, 462 U.S. at 842–43.

In applying this framework, the Supreme Court has generally used total population as the metric of comparison. *E.g., Brown*, 462 U.S. at 837–40; *Gaffney*, 412 U.S. at 745–50; *Reynolds*, 377 U.S. at 568–69. However, the Court has never held that a certain metric (including total population) *must* be employed as the appropriate metric. *See Burns v. Richardson*, 384 U.S.

---

3. To the extent Plaintiffs intended to allege the second theory, they have failed to do so plausibly.

73, 91–92 (1966) ("[T]he Equal Protection Clause does not require the States to use total population figures derived from the federal census as the standard by which this substantial population equivalency is to be measured."). Instead, the Court has explained that the limit on the metric employed is that it must not itself be the result of a discriminatory choice and that, so long as the legislature's choice is not constitutionally forbidden, the federal courts must respect the legislature's prerogative. *Id.* at 92 (citation omitted).

Plaintiffs do not allege that the apportionment base employed by Texas involves a choice the Constitution forbids. Accordingly, Texas's "compliance with the rule established in *Reynolds v. Sims* is to be measured thereby." *Id.* Measuring it in this manner, the Plaintiffs fail to allege facts that demonstrate a prima facie case against Texas under *Reynolds v. Sims*. The Plaintiffs do not allege that PLANS172 fails to achieve substantial population equality employing Texas's metric of total population; to the contrary, they admit that Texas redrew its senate districts to equalize total population, and they present facts showing that PLANS172's total deviation from ideal, using total population, is 8.04%. Given that this falls below 10%, the Plaintiffs' own pleading shows that they cannot make out a prima facie case of a violation of the one-person, one-vote principle. *See Brown*, 462 U.S. at 842–43. Accordingly, they fail to state a claim upon which relief can be granted.

Plaintiffs attempt to avoid this result by relying upon a theory never before accepted by the Supreme Court or any circuit court: that the metric of apportionment employed by Texas (total population) results in an unconstitutional apportionment because it does not achieve equality as measured by Plaintiffs' chosen metric—voter population. *See Chen v. City of Houston*, 206 F.3d 502, 522 (5th Cir. 2000) (rejecting argument that City of

5

Houston violated Equal Protection Clause by "improperly craft[ing] its districts to equalize total population rather than [CVAP]"), *cert. denied*, 532 U.S. 1046 (2001); *Daly v. Hunt*, 93 F.3d 1212, 1222 (4th Cir. 1996) (rejecting argument that "voting-age population is the more appropriate apportionment base because it provides a better indication of actual voting strength than does total population"); *Garza v. Cnty. of L.A.*, 918 F.2d 763, 773–74 (9th Cir. 1990) (rejecting argument that decision to "employ[] statistics based upon the total population of the County, rather than the voting population, . . . is erroneous as a matter of law"), *cert. denied*, 498 U.S. 1028 (1991); *see also Lepak v. City of Irving, Texas*, 453 F. App'x 522 (5th Cir. 2011) (unpublished) (relying on *Chen* to reject argument that Equal Protection Clause requires equalizing districts based on CVAP as opposed to total population), *cert. denied*, 133 S. Ct. 1725 (2013).[4]

Plaintiffs argue that their theory is consonant with *Burns*, in which the Supreme Court faced a related argument. 384 U.S. at 81, 90. *Burns* involved a challenge to Hawaii's apportionment on the basis of registered-voter data. *Id.* Although Hawaii achieved substantial equality using its chosen metric, there were large disparities between districts when measured using total population. *Id.* at 90. The Court began by explaining that Equal Protection

---

4. Plaintiffs argue that circuit precedent, such as *Chen*, is not binding on a three-judge panel such as this one because, Plaintiffs assert, appeal is direct from the panel to the United States Supreme Court. Because we reach the same result as *Chen* regardless of whether it is binding precedent, we need not decide this question.

Plaintiffs also contend that the circuit court cases are distinguishable because, in this case, they do not ask the court to decide on behalf of the legislature which source of equality—electoral or representational—is supreme; rather they claim that substantial equality of population on both fronts is a constitutionally required choice where both can be achieved. This is a distinction without meaning. Regardless of whether both apportionment bases can be employed simultaneously, Plaintiffs ask us to find PLANS172 unconstitutional based on Plaintiffs' chosen apportionment base, even though the state employed a permissible apportionment base and achieved substantial equality of population doing so. This is the same request denied by the circuit courts that have reached the issue.

Clause jurisprudence has *"carefully left open* the question what population" base was to be used in achieving substantial equality of population. *Id.* at 91 (emphasis added). The Court then stated that a state's choice of apportionment base is not restrained beyond the requirement that it not involve an unconstitutional inclusion or exclusion of a protected group. *Id.* at 92 ("Unless a choice is one the Constitution forbids, the resulting apportionment base offends no constitutional bar, and compliance with the rule established in *Reynolds v. Sims* is to be measured thereby." (citation omitted)). The Court explained that this amount of flexibility is left to state legislatures because the decision whether to exclude or include individuals who are ineligible to vote from an apportionment base *"involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere." Id.* (emphasis added). In other words, it is not the role of the federal courts to impose a "better" apportionment method on a state legislature if that state's chosen method does not itself violate the Constitution.[5] *See also Perry v. Perez*, 132 S. Ct. 934, 942 (2012) (addressing requirement that federal courts respect legislative choices even when redrawing lines to address constitutional concerns: "In the absence of any legal flaw . . . in the State's plan, the District Court had no basis to modify that plan.")

Working from this starting point, the Supreme Court highlighted the concerns raised by using registered voters as the apportionment base as

---

5. In addition to the statements in *Burns*, the Supreme Court has repeatedly emphasized that apportionment of legislative districts is a decision primarily entrusted to state legislatures, with which a federal court is to interfere only when the Constitution demands it. *See Reynolds*, 377 U.S. at 586 (acknowledging that reapportionment is first and foremost a matter for the legislature and judicial interference is appropriate "only when a legislature fails to reapportion according to federal constitutional requisites"); *see also Miller v. Johnson*, 515 U.S. 900, 915 (1995); *Voinovich v. Quilter*, 507 U.S. 146, 156 (1993); *Growe v. Emison*, 507 U.S. 25, 34 (1993); *Chapman v. Meier*, 420 U.S. 1, 27 (1975); *Gaffney*, 412 U.S. at 749–50.

opposed to state citizenship or another permissible population base.[6] It then held that Hawaii's "apportionment satisfies the Equal Protection Clause *only because* on this record it was found to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." 384 U.S. at 93 (emphasis added). The permissible population base the Supreme Court considered in *Burns* was state citizenship. *Id.* 93–95. The Court was careful to note that its holding was limited to the specific facts before it and should not be seen as an endorsement of using registered voters as an apportionment base. *Id.* at 96 ("We are not to be understood as deciding that the validity of the registered voters basis as a measure has been established for all time or circumstances, in Hawaii or elsewhere.").

Plaintiffs characterize *Burns* as the Court "ma[king] clear that the right of voters to an equally weighted vote is the relevant constitutional principle and that any interest in proportional representation must be subordinated to that right." Quite the contrary, the Supreme Court recognized that the precise question presented here—whether to "include or exclude" groups of individuals ineligible to vote from an apportionment

---

6. The Court described the additional problems presented by using registered voters or actual voters as an apportionment base:
> Such a basis depends not only upon criteria such as govern state citizenship, but also upon the extent of political activity of those eligible to register and vote. Each is thus susceptible to improper influences by which those in political power might be able to perpetuate underrepresentation of groups constitutionally entitled to participate in the electoral process, or perpetuate a ghost of prior malapportionment. Moreover, fluctuations in the number of registered voters in a given election may be sudden and substantial, caused by such fortuitous factors as a peculiarly controversial election issue, a particularly popular candidate, or even weather conditions. Such effects must be particularly a matter of concern where, as in the case of Hawaii apportionment, registration figures derived from a single election are made controlling for as long as 10 years.

*Burns*, 384 U.S. at 92–93 (citations and internal quotation marks omitted).

base—"involves choices about the nature of representation" which the Court has "been shown no constitutionally founded reason to interfere." 384 U.S. at 92. Furthermore, the Supreme Court indicated problems in using one of the Plaintiffs' proposed metrics—registered voters—and ultimately measured the constitutionality of Hawaii's apportionment using the permissible population base of state citizenship. *See id.* at 92–93. We conclude that Plaintiffs are asking us to "interfere" with a choice that the Supreme Court has unambiguously left to the states absent the unconstitutional inclusion or exclusion of specific protected groups of individuals. We decline the invitation to do so. *See, e.g.*, *Chen*, 206 F.3d 502; *Daly*, 93 F.3d 1212.

### IV. Conclusion

The Plaintiffs have failed to plead facts that state an Equal Protection Clause violation under the recognized means for showing unconstitutionality under that clause. Further, Plaintiffs' proposed theory for proving an Equal Protection Clause violation is contrary to the reasoning in *Burns* and has never gained acceptance in the law. For these reasons, we conclude that Plaintiffs' complaint fails to state a claim upon which relief can be granted. *See Neitzke*, 490 U.S. at 327 (noting that court may dismiss claim that "is based on a close but ultimately unavailing [legal theory]").

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss (Clerk's Doc. No. 15) is **GRANTED** and Plaintiffs' claims against the Defendants are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs' motion for summary judgment (Clerk's Doc. No. 12) and the motion to intervene (Clerk's Doc. No. 25) are **DISMISSED**.

All other requests for relief are denied.

A final judgment will be rendered by separate order.

SIGNED this 5th day of November, 2014.

/s/ Lee Yeakel
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

/s/ Catharina Haynes
CATHARINA HAYNES
UNITED STATES CIRCUIT JUDGE

/s/ Michael H. Schneider
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE